## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| OPEN MRI AND IMAGING OF RP VESTIBULAR DIAGNOSTICS, P.A., <br><br> Plaintiff, <br><br> vs. <br><br> CIGNA HEALTH AND LIFE INSURANCE COMPANY, <br><br> Defendant. | Civil Action No.: 2:20-CV-10345-KM-ESK <br><br><br> *Document electronically filed* |

## MEMORANDUM OF LAW OF PLAINTIFF OPEN MRI AND IMAGING OF RP VESTIBULAR DIAGNOSTICS, P.A. IN OPPOSITION TO DEFENDANT CIGNA HEALTH AND LIFE INSURANCE COMPANY'S MOTION TO DISMISS AMENDED COMPLAINT

**LEVINE DESANTIS, LLC**
Peter Nichols, Esq.
530 Morris Avenue, Suite 300
Springfield, New Jersey 07081
Tel.: (973) 376-9050
Fax: (973) 376-0230
Email: pnichols@levinedesantis.com

*Attorneys for Plaintiff Open MRI and Imaging of RP Vestibular Diagnostics*

## TABLE OF CONTENTS

| | PAGE(S) |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| PROCEDURAL HISTORY | 2 |
| STATEMENT OF FACTS | 2 |
| ARGUMENT | 3 |
| POINT I  DEFENDANT MISCHARACTERIZES THE STANDARD FOR A MOTION TO DISMISS | 3 |
| POINT II THE AMENDED COMPLAINT DOES STATE A CAUSE OF ACTION FOR DAMAGES UNDER ERISA FOR VIOLATIONS OF THE TERMS OF THE CARES ACT AND FAMILIES FIRST CORONAVIRUS RESPONSE ACT | 8 |
| A.  The Defendant's Position: An Overview | 8 |
| B.  Content and Purposes of the Statutory Provisions | 8 |
| C.  The Issue of a Private Cause of Action under the CARES Act or the FFCRA | 11 |
| D.  The Private Cause of Action under ERISA | 15 |
| POINT III WITH RESPECT TO ITS CLAIMS FOR UNJUST ENRICHMENT AND QUANTUM MERUIT PLAINTIFF DOES ALLEGE THE CONFERRAL OF A BENEFIT | 17 |
| A.  Conferral of Benefits upon Defendant | 17 |
| B.  Preemption | 18 |
| POINT IV PLAINTIFF SHOULD BE ALLOWED A SECOND AMENDMENT OF THE COMPLAINT | 18 |
| CONCLUSION | 19 |

i

**TABLE OF AUTHORITIES**

**CASES**                                                                                    **PAGE(S)**

*Alexander v. Sandoval*, 532 U.S. 275 (2001),                                                13, 14

*Apollo MD Bus. Services, L.L.C. v. Amerigroup Corp.*, 2017 BL 545950 (N.D.      17
Ga., Nov. 27, 2017), the

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Fowler v. UPMC Shadyside*, 578 F.3d     3, 4, 7
203, 211 (3d Cir. 2009)

*Atlantic Plastic Hand Surgery, P. A. v. Anthem Blue Cross Life & Health Ins.*   7
*Co.*2018 BL 402880 (D.N.J. 2018),

*Autumn Court Operating Company LLC v. Healthcare Ventures of Ohio*. 2021      15
BL 33261 (S.D. Oh. 2021)

*Cannon v. Univ. of Chi.*, 441 U.S. 677 (1979),                                              14

*Cevdet Aksut Ve Ogullari Koll, STI v. Cavusoglu,* 2015 BL 224746 (D.N.J. July     3
14, 2015
*Cort v. Nash*, 422 U.S. 66 (1975)                                                           14

*Degrazia v. FBI*, 316 Fed. Appx 172, 173 (3d Cir.)                                          6

*Donovan*[v.*Dillingham,* 688 F.2d 1367( 11th Cir 1982                                       5

*Genesis Bio-Pharmaceuticals, Inc.*, 27 Fed. Appx 94, 99-100 (3d Cir. 2002)                  5

*Hein v. FDIC,* 88 F.3d 210 (3d Cir. 1996                                                     6

*Hooven v. Exxon Mobil Corp*, 465 F 3rd 566 (3d Cir..2006                                     6

*Johnson v JPMorgan Chase Bank, N.A.* 2020 WL 560863 (S.D.N.Y. Sept. 21,      15
2020)

*Kofler v. Sayde Steeves Cleaning Serv. Inc.*, 220 BL 322425 (M.D. Fla. 2020)      13
(FFRCA

K.S. v. *Thales USA, Inc.*, 2020 WL 1895064 (D.N.J. Apr. 29, 2019),                          6

| **CASES** | **PAGE(S)** |
|---|---|
| *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453 (1974) | 13 |
| *N.R. v. Raytheon Co.*, 2020 WL 3065415 (D. Mass., June 9, 2020). | 16 |
| *Pai v. DRX Care, LLC*, 2014 WL 837158 (D.N.J 2014), | 5 |
| *PBGC v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) | 3 |
| *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). | 18 |
| *Profiles, Inc. v. Bank of Am. Corp.*, 435 F.Supp.3d 742 (D. Md. 2020), | 15 |
| *Rizzo v. First Reliance Standard Life Ins. Co.*, 2017 BL 464997 (D.N.J. Dec. 28, 2017), 3. | 4 |
| *Robinson v. Anthem Blue Cross, Life & Health Ins. Co.*, 2018 BL 441657 (D.N.J. Nov. 30, 2018), | 6 |
| *Shaver v.Siemens Corp.*, 670 F3d 462, 475 (3d Cir. 2012 | 4 |
| *Shehan v. U.S. Dep't of Justice*, 2020 BL 505566 (S.D. Ohio Dec. 29, 2020). | 15 |
| *Sheppard v. Zavis*, 2012 BL 150250, 2012 WL 2341036 (D. N.J. June 19, 2012 | 4 |
| *Smith v. United Healthcare Ins. Co.*, 2019 WL 3238918 (N.D. Cal., July 18, 2019), t | <u>17</u> |
| *Touche Ross & Co. v. Redington*, 442 U.S. 560, 569 (1979) ( | 13 |
| *Transamerica Mortgage Advisors, Inc. v. Lewis*, 44 U.S. 11 (1979), | 13 |
| *University Spine Ctr. V. Cigna Health & Life Ins. Co*, 2018 BL 313406 (D.N.J. 2018) | 6 |
| *U.S. Airways v. McCutchen*, 569 U.S. 88 (2013), | 6 |
| *Wisniewski v. Rodale, Inc.*, 510 F.3d 294 (3d Cir 2007). | 13 |

| **STATUTES** | **PAGES** |
|---|---|
| Coronavirus Aid, Relief, and Economic Security (CARES) Act, Public Law 116-136, 134 Stat. 281 | 1, 8, 11, 12, 16, 17 |
| Employment Retirement Income Security Act (ERISA), | 1, 5, 6, 8, 15, 16, 18 |
| 29 U.S.C. Section 1132(a)(1)), et seq. Family First Coronavirus Response Act ("FFCRA"), Public Law 116-127, 134 Stat. 178 | 1, 2, 8, 11, 13, 14, 15, 16 |

**RULES**

| | |
|---|---|
| Rule 12(B)(6), Federal Rules of Civil Procedure | 1, 6, 18 |
| Rule 15( a )( 2), Federal Rules of Civil Procedure | 18 |
| Rule 56,  Federal Rules of Civil Procedure | 8 |

**SECONDARY SOURCES**

| | |
|---|---|
| FAQS about Families First Coronavirus Response Act and Coronavirus Aid, Relief, and Economic Security Act Implementation, Part 42 https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/faqs/aca-part-42.pdf | 12 |
| Bulletin published by the California Department of Managed Health Care bnaregs.bna.com/?id=CA_-8697 | 9, 10 |
| Summary presented by Arnold and Porter https://arnoldporter.com/en/perspectives/publications/ 2020/03/coronavirus-update-proposed-cares-act#healthcare. | 10 |
| Bloomberg Law "Fast Answer" to the question "Do health plans or health insurance issuers have to reimburse providers for items and services related to coronavirus testing?"available at HTTPS: // www.bloomberg law. com/product/blaw/document/ X9O44SJS 000000?criteria_ ID=57ae7ed1d24f524af4cefd66e0fac61f&searchGuid =3ad6560-0 | 10 |
| Summary by Jackson Walker available at https://www. jw.com/news/insights-cares-act-healthcare-provisions-covid19/ | 10, 11 |

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted by Plaintiff Open MRI and Imaging of RP Vestibular Diagnostics, P.A.("Plaintiff") in opposition to the Motion of Defendant Cigna Life and Health Insurance Co. ("Defendant") for an Order pursuant to rule 12(B)(6) of the Federal Rules of Civil Procedure dismissing the Amended Complaint.

Defendant first asserts the Amended Complaint to be insufficient because it does not expressly plead the assignments and plan provisions entitling Plaintiff to collect the patients' insurance benefits. Defendant makes reference to the extensive exhibits appended to the Amended Complaint but assigns them little significance. As set forth herein, in considering a Rule 12(B)(6) motion to dismiss, the Court takes into consideration not only the text of the complaint but any factual exhibits annexed thereto, together with matters of public knowledge. Furthermore, the existence of an insurance plan may be inferred from the totality of the evidence presented, reviewed in light of common sense and the court's experience. It is perfectly apparent from the claim evaluation forms, returned to plaintiff by the defendant virtually every time it submitted a claim, that there was no issue as to the existence of a plan or the assignment of the patients' rights and liabilities to plaintiff.

Defendants argue that there is no private cause of action under the CARES Act, Public Law 116-136, 134 Stat.281 or the Family First Coronavirus Response Act, Public Law 116-127, 134 Stat. 178 ("FFCRA"). Now, of course, the Amended Complaint does not assert such a cause of action under these statutes, but instead under the Employment Retirement Security Act of 1974, 29 U.S.C. 1001 et seq. (sec. 1132) ("ERISA"). Defendant maintains that the substantive claims under the CARES Act and the FFCRA may not be brought as an ERISA action either. It asserts

1

that the only remedy for Defendant's flouting the requirement to reimburse Coronavirus testing and treatment is administrative enforcement. But this effectively leaves a medical provider such as Plaintiff with no remedy for hundreds of thousands of or potentially millions of dollars in unpaid receivables and tens or potentially hundreds of thousands in outlays. Certainly, this is the case if the official enforcement policy is circumspect or "relaxed." It could hardly have been Congress's intention in enacting the CARES Act and the FFCRA as legislative remedies to the national pandemic to. leave them as ineffectual gestures.

Finally, should the Court find the present Amended Complaint deficient, Plaintiff begs leave to  correct the deficiencies through a second amendment of the pleading

## PROCEDURAL HISTORY

Plaintiff endorses and incorporates the summary of the procedural history presented by Defendant, as far as it goes. Plaintiff would add only that after the filing of the first Complaint, Defendant filed an Answer, only resorting to a Rule 12(b)(6) motion after Plaintiff amended the Complaint. Additionally, a discovery conference was held after the motion was filed, at which Defendant indicated its intention to move for a stay of discovery pending resolution of said Motion.

## STATEMENT OF FACTS

The statement of facts provided by Defendant is accurate in its quotation of selections from the Amended Complaint with the following significant exception. Defendant maintains that "[n]o allegation appears in the Complaint as to why the dispositions of the claims set forth in the attached explanations of benefits--that the services were not actually provided as billed or billed incorrectly --are wrong." In point of fact, paragraph 10 of the amended complaint states that "Plaintiff faithfully rendered the services stated in the invoices." That surely is an allegation as to "why the

2

dispositions of the claims set forth in the attached explanations of benefits are wrong." Defendant denied every penny of reimbursement asked in the invoices to which the claim evaluations responded.

**ARGUMENT**
**POINT I**
**DEFENDANT MISCHARACTERIZES THE STANDARD FOR A MOTION TO DISMISS**

In presenting the standard for evaluating a motion to dismiss, defendant relies upon *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). While it is quite true that this decision requires that pleading contain factual content sufficient to establish a cause of action, the Court may still look for that factual content in the exhibits appended to the complaint, in any matters incorporated by reference in the complaint, or in matters of common knowledge. *PBGC v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record"). Moreover, "determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) ("[A] District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief'.... This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"); *Cevdet Aksut Ve Ogullari Koll, STI v. Cavusoglu*, 2015 BL 224746 (D.N.J. July 14, 2015), 5 ("'Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense.'"); Royal *Mile Co. v. UPMC*, 40 F.Supp.3d 552, 565 (W.D. Pa. 2014) (citing the above language from *Iqbal*); *Animal Sci Prods. V. China Mimmetals Corp.*, 34 F.Supp. 3d 465,

3

484 (citing the same language from *Iqbal*); *Sheppard v. Zavis*, 2012 BL 150250 (D. N.J. June 19, 2012), 4 ("'The Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: "stating... a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element."'" (quoting *Fowler*, *supra*).

It is axiomatic that on a motion to dismiss the Complaint, "the Court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, viewing them in the light most favorable to the non-moving party." *Rizzo v. First Reliance Standard Life Ins. Co.,* 2017 BL 464997 (D.N.J. Dec. 28, 2017), 3.

The Defendant attacks the Amended Complaint on the grounds that it does not specifically plead the assignments by which the Plaintiff brings the action in the name of the patients who received the diagnostic testing and does not produce the actual insurance plans under which the patients are covered. The claim evaluation forms appended to the complaint as Exhibits"B" and "C," however, indicate plainly that no issue regarding the assignments of claim, standing, or the terms of the relevant insurance plans figured in the Defendant's decision to reject the claims. As pleaded in the Amended Complaint, the only grounds given for rejecting the claims were their alleged factual falsity, alleged duplication of other claims, or their possible offset by deductibles or coinsurance.. The existence of valid assignments can therefore easily be inferred.[1]

As for the insurance plans themselves, such a plan is implied by the totality of the circumstances. Thus in *Shaver v. Siemens Corp.*, 670 F3d 462, 475 (3d Cir. 2012) the court

---

[1] No such factual documentation was contained in the complaint in, e.g., *Lopez v. Beard*, 333 Fed. Appx. 685 (3d Cir. 2009), cited by Defendant.

observed, "under *Donovan*[v.*Dillingham*, 688 F.2d 1367( 11th Cir 1982)], an ERISA plan 'is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits .'" The Amended Complaint provides ample basis for inferring the existence of a plan or plans. In the case of each claim evaluation, Defendant obviously acknowledges that it is liable for the cost of the diagnostic testing or treatment reported, if it is accurate and there is no offset. There would be no reason for Defendant to concern itself with the services reported and those actually provided if there were no plan covering the reported services. There is no claim evaluation form in the record that states "not covered by a valid plan" as the reason for denying payment. And the ERISA violation, plainly, is failure to pay insurance benefits on an employee plan.

The Defendant further criticizes certain of the exhibits appended to the Amended Complaint. Its first objection seems to be the deletion of the names of the patients treated. This reduction obviously was done in order to protect the patients' privacy rather than publish their identities on the World Wide Web. It is equally obvious that their identities could be revealed under a confidentiality agreement in discovery. Similarly, if there are individual invoices that are included in error, that is a ground for reducing the amount of damages, not for dismissing the Amended Complaint. Defendant does not contend that none of the invoices and claim evaluations relate to coronavirus diagnostic testing.[2]

---

[2] *Pai v. DRX Care, LLC*, 2014 BL 58495 (D.N.J 2014), cited by Defendant, affirms that a court considering a motion to dismiss may "consider the factual allegations within other documents, including those described or identified in the Complaint..." The statement that the court "need not accept allegations as true that are contradicted by the documents" hardly means that if any of the invoices or claim evaluations are included mistakenly, the Court should not count all the others as evidentiary substantiation of the Amended Complaint. And in *Genesis Bio-Pharmaceuticals, Inc.*, 27 Fed. Appx 94, 99-100 (3d Cir. 2002), the court found that the appended documents provided no evidence of the authorization to make an agreement claimed by the plaintiffs. Is it Defendant's contention here that none of the appended documents pertain

None of the cases cited at pages 5-6 of Defendant's Memorandum of Law involve a Complaint that contains the appended interaction of claim and response between medical provider and insurer that is included in the present one. *In U.S. Airways v. McCutchen*, 569 U.S. 88 (2013), the court was not dealing with a challenge to the facial sufficiency of a complaint. Instead it was a claim based upon an equitable lien by agreement and held that the ERISA plan's terms govern. In *Hooven v. Exxon Mobil Corp*, 465 F 3rd 566 (3d Cir..2006), once again, the court was not evaluating the facial sufficiency of a complaint but ruled that case was governed by ERISA and the ERISA plan. There is no way of telling from this decision whether the Third Circuit would have found the exchange of documents between the parties sufficient to show the nature of the plan or not. *Hein v. FDIC,* 88 F.3d 210, 215 (3d Cir. 1996) indeed stands for the proposition that "only the words of the Plan can create an entitlement to benefits" and that the court is "required to enforce the Plan as written" but it does not address the standard for alleging the existence of a plan. In *K.S. v. Thales USA, Inc.*, 2020 BL 151904 (D.N.J. Apr. 29, 2019), 5 the complaint was dismissed as insufficient, but it relied upon an unexplained statement that the amount paid was "arbitrary" and "bears no relationship to what Plaintiff required" in defining what was owed. Similarly, in *University Spine Ctr. V. Cigna Health & Life Ins. Co*, 2018 BL 313406 (D.N.J. 2018), the court found that the plaintiff had "filed a boilerplate complaint...in order to *find out* if it had been underpaid under the terms of the Plan." 2018 BL 313406 at 3. In *Robinson v. Anthem Blue Cross, Life & Health Ins. Co.*, 2018 BL 441657 (D.N.J. Nov. 30, 2018), 4 the Complaint alleged merely that the Plaintiff had been underpaid. And whereas in *Robinson*, the complaint "fail[ed] to allege

to Coronavirus testing? In *Degrazia v. FBI*, 316 Fed. Appx 172, 173 (3d Cir. 2009), also cited by Defendant, the Court goes so far as to say that Rule 12(b)(6) "'does not countenance [] dismissals based on a judge's disbelief of a complaint's factual allegations.'" Is this not exactly what Defendant is asking the Court to do?"

what amount plaintiff should be entitled to under [the] provisions" of the plan, the present Amended Complaint does articulate the total amount of the invoices submitted for which no compensation was forthcoming. Here, it is undisputed that the Defendant paid nothing for the claims referenced in Exhibits "B" and "C." Again, in *Atlantic Plastic Hand Surgery, P. A. v. Anthem Blue Cross Life & Health Ins. Co.*2018 BL 402880 (D.N.J. October 13, 2018), the Complaint, like that in *Thales*, *supra*, pleaded only that the Defendant had denied Plaintiff its "usual and customary charge." 2018 BL 402880 at 7.

It is worth noting that, as pleaded in paragraphs 15 and 16 of the Amended Complaint, Plaintiff attempted, without success, to contact Defendant in order to negotiate settlement of this matter before filing suit. One consequence of such informal contact might have been obtaining copies of the insurance plan, which Defendant does not presently possess. But to reiterate, none of Defendant's negative claim evaluations, all filed as exhibits to the Amended Complaint, cites the terms of the Plan as a basis for denying the claims.

Indeed, the language of cases since *Twombly* and interpreting its meaning is instructive. Particularly important is the Supreme Court's ruling in *Iqbal*, *supra*. There, the court notes, "Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." For "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 556 U.S. at 678. But in this instance, the Amended Complaint can hardly be said to consist of conclusory allegations. The actual claim submissions are included in the Amended Complaint, along with the Defendant's claim evaluations rejecting Plaintiff's applications for payment. Defendant may find the evidence appended to the Amended Complaint

insufficient—it has the right to convert the motion into one for summary judgment under Rule 56

F.R.C.P., if it chooses—but it cannot claim that the Amended Complaint is conclusory in nature.

## POINT II
## THE AMENDED COMPLAINT DOES STATE A CAUSE OF ACTION FOR DAMAGES UNDER ERISA FOR VIOLATIONS OF THE TERMS OF THE CARES ACT AND FAMILIES FIRST CORONAVIRUS RESPONSE ACT

### A.   The Defendant's Position: An Overview

The Defendant argues that since there is no private cause of action specified in the CARES

Act or in the FFCRA, and since neither the relevant provisions of the CARES Act nor of the

FFCRA a are "incorporated" into ERISA, there can be no private right of action by which plaintiff

may seek to enforce the claims assigned to it. They accordingly cite certain out-of-circuit cases

finding that the CARES Act and the FFCRA in and of themselves do not confer a private right of

action, as well as other cases, also out-of-circuit, rejecting private causes of action under ERISA,

stemming from statutes other than the CARES Act and the FFCRA.

In fact, the essential legislative purpose of the latter two statutes and, in particular, of their

provisions directed at financing the diagnostic testing necessary to the control of the pandemic

would be defeated by relegating their enforcement to the action of administrative agencies or

cabinet departments. To deny private medical providers a litigation remedy for the failure of

insurance companies to pay the benefits mandated by the statues specifically enacted to deal with

the coronavirus, would leave them with the choice of either abandoning the diagnostic and

treatment services so vitally needed by a threatened population, or alternatively of facing

insolvency. The cases cited by the defendant do not mandate so draconian a choice.

### B.   Content and Purposes of the Statutory Provisions

Section 6001(a) of the FFCRA provides, as pertinent:

8

In general a group health plan and a health insurance issuer offering group or individual health insurance coverage ... shall provide coverage, and shall not impose any cost sharing (including deductibles, co payments , and coinsurance) requirements or prior authorization or other medical management requirements, for the following items and services furnished during any portion of the emergency. ... Beginning on or after the date of the enactment of this act:

(1) in vitro diagnostic products ... for the detection of SARS-CoV-2 or the diagnosis of the virus that causes covid-19 that are approved, cleared, or authorized under... the federal food, drug, cosmetic act, and the administration of such in vitro diagnostic products.

(2) Items and services furnished to an individual during health care provider office visits( which term in this paragraph includes in person visits and Tele health visits ), urgent care center visits, and emergency room visits that result in an order for or administration of an in vitro diagnostic product described in paragraph (1), but only to the extent such items and services relate to the furnishing or administration such product or to the evaluation of such individual for purpose of determining the need of such individual for such product.[3]

Section 3202 (a) of the CARES Act provides, as pertinent:

Reimbursement rates: A group health plan for a health insurance issuer providing coverage of items and services described in section 6001 (a) of division F of the Families First Coronavirus Response Act ... with respect to an enrollee shall reimburse the provider of the diagnostic testing as follows:

(1) if the health planner issuer has a negotiated rate with such provider in effect for the public health emergency ... such negotiated rate shall apply throughout the period of such declaration.

(2) If the health plan or issuer does not have a negotiated rate with such provider, such plan or issuer shall reimburse the provider in an amount that equals the cash price for such service as listed by the provider on a public Internet website, or such plan or issuer may negotiate a rate with such provider for less than such cash price.

It is apparent that the intent of this legislation was to facilitate diagnostic testing for Coronavirus and thereby to alleviate a national emergency. It did that by removing certain of the legal and business obstacles faced by patients and medical providers in obtaining and performing the diagnostic testing service. Thus, as discussed in a bulletin published by the California

---

[3] CARES Act section 3201 amends this section so as to expand the categories of Covid-19 test that are covered, including now tests requested by the developer and developed and authorized by a state.

Department of Managed Health Care and found at bnaregs.bna.com/?id=CA_-8697, which

presents an "overview of the new federal guidance:"

> The new guidance clarifies that health plans must cover COVID-19 diagnostic tests for asymptomatic enrollees who have no known or suspected exposure to COVID-19 when a licensed or authorized health care provider administers or has referred the enrollee for such a test.
>
> Health plans must cover such testing without cost sharing, prior authorization, medical screening criteria, or other medical management requirements imposed by the plan.
>
> When an individual seeks and receives a COVID-19 diagnostic test from a licensed or authorized health care provider, or when a licensed or authorized health care provider refers an individual for a COVID-19 diagnostic test, plans and issuers generally must assume that the receipt of the test reflects an "individualized clinical assessment" and the test should be covered without cost sharing, prior authorization, or other medical management requirements.
>
> Accordingly, health plans must cover an enrollee's COVID-19 testing regardless of whether the enrollee receives the test from an in-network or out-of-network provider.[4]

The purpose of the relevant cares act provisions is further adumbrated in the summary

presented by Arnold and Porter (see https://arnoldporter.com/en/perspectives/publications/

2020/03/coronavirus-update-proposed-cares-act#healthcare). In discussing the legislative

history of the CARES Act (introduced as S. 3548 on March 19, 2020), the authors point

out the great concern with assisting "front line medical providers as they ramp up to treat

the pandemic" that informed the initial negotiations on the bill. The Jackson Walker firm

published a similar discussion, relating the purpose of the CARES Act ("to 'provide

---

[4] See also the Bloomberg Law "Fast Answer" to the question "Do health plans or health insurance issuers have to reimburse providers for items and services related to coronavirus testing?" available at Bloomberg Law, Secondary Sources, Fast Answers for "Coronavirus testing," answer 6. The answer presented is:

> Yes. If a health plan or issuer has a negotiated rate for reimbursement, then such rate applies. If a health plan or issuer does not have a negotiated rate, then the reimbursement amount equals the "cash price" as listed by their provider on a public website.

emergency assistance and health care response for individuals, families, and businesses affected by the 2020 pandemic'") and the provisions requiring immediate insurance reimbursement for diagnostic testing and vaccines. (see, https://www.jw.com/news/insights-cares-act-healthcare-provisions-covid19/)

### C. The Issue of a Private Cause of Action under the CARES Act or the FFCRA

To repeat, the defendant's position is that the above provisions can only be enforced by the mechanisms entrusted to the Secretary of Health and Human Services, Secretary of Labor, and Secretary of the Treasury. Indeed, there are provisions in both acts for such administrative enforcement. It is apparent, however, that provisions such as CARES Act section 3202(2), providing for a civil penalty to be paid to the government and FFCRA 6001(b), also stipulating enforcement by action of the above enumerated cabinet departments, will do nothing for the solvency of a medical provider, endeavoring to serve the manifest public purpose of the legislation by providing largescale services addressing the national emergency. The emergency generated a massive demand for such testing, which could be serviced with the latest technology, but with a constant outlay and disbursement by the medical provider. If he is not compensated, he must cease the Coronavirus testing, defeating the entire purpose of the legislation. Will an administrative authority's investigation of a complaint for non-compliance by an insurer remedy this problem? Is it likely that such an administrative authority will review the claims and claim evaluations transmitted between medical provider and insurer with the purpose of determining whether the law has been violated and assessing a monetary penalty, which in any case is paid to the government, not the provider? Does it appear probable that given the present emergency and the urgent need for entities like Plaintiff to perform services of the kind that it has been providing, Congress

intended to restrict its remedies in the face of the position taken by Defendant? It will not pay Plaintiff for Coronavirus testing.

The "FAQS about Families First Coronavirus Response Act and Coronavirus Aid, Relief, and Economic Security Act Implementation Part 42" that Defendant cites at page 15 of its Memorandum of Law says much the same thing as the summaries of the statutes cited above. Defendant, however, cites this document to show that the Departments of Labor, Health and Human Services, and Treasury are charged with enforcing the CARES Act and the FFCRA and so no private action for the recovery of unpaid claims should be allowed. But once again, the enforcement policy described makes apparent that it would be utterly inadequate to provide relief to an entity such as Plaintiff, attempting to provide mass diagnostic testing to address the emergency and to remain solvent. Instead, the FAQS note in the second paragraph on Page 1:

> The Departments are working together with employers, issuers , States, providers and other stakeholders to help them come into compliance with the new law and are working with families and individuals to help them understand the new law and benefit from it, as intended. Compliance assistance is a high priority for the Departments. *Our approach to implementation is and will continue to be marked by an emphasis on assisting (rather than imposing penalties on) group health plans, health insurance issuers and others that are working diligently and in good faith to understand and come into compliance with the new law.* The Departments anticipate issuing additional guidance about the FFCRA, the CARES Act, and other health coverage issues related to COVID-19.  (emphasis supplied).

In the third paragraph of the same FAQS, it states, "Due to the urgent need to help facilitate the nation's response to the public health emergency posed by COVID-19, the Departments are exercising discretion to adopt temporary policies of *relaxed enforcement* in connection with certain standards identified below under the conditions outlined in this guidance." (emphasis supplied)

This, in other words, is only nominal enforcement. It obviously is not geared to review the claims for compensation submitted by the medical services provider. If the Court rules that the Plaintiff is relegated to this remedy, all that it means is that Plaintiff has no remedy at all for its

12

unsatisfied claims in the foreseeable future. Under those circumstances, its only business recourse is to cease providing the coronavirus diagnostic services. Whether that would serve the acknowledged purposes of the CARES Act and FFCRA, Plaintiff commends to the Court's discretion.[5]

Defendant cites *Alexander v. Sandoval*, 532 U.S. 275 (2001), followed by the Third Circuit in *Wisniewski v. Rodale, Inc.*, 510 F.3d 294 (3d Cir 2007). The characterization of the Supreme Court's standard made in *Wisniewski* ("(1) Did Congress intend to create a personal right?; and (2) Did Congress intend to create a private remedy?"), 510 F.3d at 301, does somewhat truncate the analysis in *Sandoval*. For the Supreme Court there distinguishes "statutes that focus on the person regulated" from those that focus on "the individuals protected." 532 U.S. at 289.Accord, *Touche Ross & Co. v. Redington*, 442 U.S. 560, 569 (1979) (private right of action found where the statute "prohibited certain conduct or created federal rights in favor of private parties"). It is where the focus of the statute is on the "individuals protected" that the statute may be found to create a private remedy. In stating, "A group health plan or a health insurance issuer providing coverage of items and services described in section 6001 (a) of division F of the Families First Coronavirus Response Act ... with respect to an enrollee shall reimburse the provider of the diagnostic testing as follows," does the CARES Act, Section 3202(a) not focus on the "provider of the diagnostic testing" at least as much as on the "group health plan" or "health insurance issuer?"

---

[5] The argument that because there is administrative enforcement and other remedies available for violations of other provisions of the CARES Act or FFCRA it should be assumed that there is no civil action available for violation of the insurance benefit sections, which Defendant makes based upon *Kofler v. Sayde Steeves Cleaning Serv. Inc.*, 2020 BL 322425 (M.D. Fla. 2020) (FFRCA anti-discrimination sec. 5104) and upon two Supreme Court decisions concerning unrelated statutes, *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453 (1974) and *Transamerica Mortgage Advisors, Inc. v. Lewis*, 44 U.S. 11 (1979), would preclude the multi-factored analysis prescribed by *Cort, Sandoval,* and *Wisniewski, infra.*

The *Sandoval* Court, moreover, cited *Cort v. Nash*, 422 U.S. 66 (1975) as the decision that ushered in the contemporary jurisprudence on the issue of private causes of action under statutes that do not expressly provide for one. As noted in the subsequent *Cannon v. Univ. of Chi.*, 441 U.S. 677 (1979), also citing *Cort*, that latter decision recognized a four-part test for determining a private right of action. 441 U.S. 688-709. The four criteria are (1) "whether the statute was enacted for the benefit of a special class of which the plaintiff is a member" (2) whether the legislative history suggests an intent to create a private remedy (3) whether recognizing a private remedy would "frustrate the underlying purpose of the legislative scheme" and (4) "whether implying a federal remedy is inappropriate because the subject matter is basically of concern to the States."

It would seem possible to say that the CARES Act and FFCRA provisions upon which the Amended Complaint is based were intended to assist both the patients and the medical care providers in making diagnostic testing available for a specific disease in an extraordinary time. As suggested above, the legislative history, concomitant with the history of the national crisis, might be said to favor making the availability and compensation for such testing as expeditious as possible. It is difficult, by the same token, to see how allowing a private remedy would frustrate any purpose of the statutes. Surely, the federal administrative authorities are free to exercise their investigatory powers whenever they see fit, regardless of what sums are recovered by private litigants. And the subject matter is obviously of primary concern to the federal government, which enacted the CARES Act and the FFCRA, rather than to the states.

In short, while there have been a smattering of cases in diverse circuits finding that there is no private cause of action under the cited statutes[6], there is room and justification for this Court to make a different finding.

D.  The Private Cause of Action under ERISA

Plaintiff, in any event, does not in the Amended Complaint seek redress under the CARES Act or the FFCRA, per se, but instead seeks enforcement of their substantive provisions through the private cause of action afforded by ERISA Section 502 (29 U.S.C. Section 1132(a)(1)). This section provides, as pertinent:

> **Persons empowered to bring a civil action**--a civil action may be brought –
> (1) by a participant or beneficiary—
> ....
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

Contrary to Defendant's facetious intimation, Plaintiff does not assert the "talismanic power" of any of the above statues to generate liability pursuant to any other one. The quoted ERISA subsection provides quite specifically for a private litigant, who is "a participant or beneficiary" to bring a civil action in order "to recover benefits due to him under the terms of his

---

[6] *Johnson v JPMorgan Chase Bank, N.A.* 2020 BL 359649 (S.D.N.Y. Sept. 21, 2020) and *Profiles, Inc. v. Bank of Am. Corp.*, 435 F.Supp.3d 742 (D. Md. 2020), as Defendant says, concerned litigants' rights under the paycheck protection program (Sec. 1102 of the Act), something not so directly related to the central purpose of the two statutes as the actual performance of diagnostic testing and treatment. The same is true of *Shehan v. U.S. Dep't of Justice*, 2020 BL 505566 (S.D. Ohio Dec. 29, 2020). *Autumn Court Operating Company LLC v. Healthcare Ventures of Ohio*. 2021 BL 33261 (S.D. Oh. 2021) represented an attempt to access deposited CARES Act funds, as a remedy in a landlord-tenant dispute. Indeed, all of the authorities cited by the *Autumn* court at the bottom of page 5 of its opinion involve attempts to use the Act to satisfy business claims, unrelated to the central purpose of controlling the pandemic.

plan" or to "enforce his rights under the terms of the plan." The patients' rights having been assigned to Plaintiff, it can bring the action. And that is a plausible basis to conclude that plaintiff was wrongly denied benefits in violation of ERISA Section 502(a)(1)(B). The patients' entitlement to the benefits is set forth in the cited provisions of the CARES Act and the FFCRA, whether or not they themselves confer a private right of action, and the entitlement became Plaintiff's by assignment.

As discussed above, Defendant places great emphasis on the fact that both statutory schemes (CARES Act and FFCRA) include an administrative enforcement mechanism, and suggest a presumption that under those circumstances, no private right of action is allowed. But ERISA, 29 U.S.C. 1132 (a) *does* expressly provide for enforcement actions by plan "participants" and "beneficiaries" as well as by the Secretary of Labor 29 U.S.C. 1132 (a) (2)-(8) and by a state 29 U.S.C. 1132(a)(7).

Defendant's case for dismissal, therefore, depends upon its argument that no substantive claim under the Cares Act or the FFCRA can be brought as a private cause of action under ERISA. In support of that proposition, Plaintiff cites *N.R. v. Raytheon Co.*, 2020 BL 214970 (D. Mass., June 9, 2020). But in that case, the plaintiff was attempting to plead a Parity Act violation through ERISA. The court found that as he "does not allege any right to benefits 'under the terms of the plan,'" ERISA relief was not available. In the instant case, it is precisely the failure of the Defendant to pay any benefits pursuant to the plan that constitutes the cause of action. It is not a question of "incorporating" the CARES Act and the FFCRA into ERISA, as Defendant continually suggests. Rather, the precise terms of 29 U.S.C. 1132(a)(1)(B) apply—Plaintiff, as assignee, has not been paid under the plan.

16

Similarly, in *Smith v. United Healthcare Ins. Co.*, 2019 BL 266794 (N.D. Cal., July 18, 2019), where the court condemned "an attempted end-run around the statutory limitation," the substantive claim was under the Affordable Care Act, specifically the non-discrimination provision thereof. The Plaintiff claimed that she was reimbursed less because the services rendered were psycho-therapeutic rather than standard medical. And in *Apollo MD Bus. Services, L.L.C. v. Amerigroup Corp.*, 2017 BL 545950 (N.D. Ga., Nov. 27, 2017), the ERISA claim was rejected because of inadequate pleading of assignment. 2017 BL 545950 at 10.

Plaintiff in this action asserts a failure to pay benefits pursuant to claims submitted, and that is all. It is true that the issue of whether the provider is in network has been removed by the CARES Act and FFCRA (and is not asserted by Defendant). But the essential claim that Plaintiff seeks to bring under ERISA is the same as that which it asserts under the CARES Act and FFCRA, except that those statutes are written without private causes of action.

If any "end-run" around statutory provisions seems imminent, it is one around the protections afforded patients and medical providers by the CARES Act and FFCRA in this national crisis.

## POINT III
## WITH RESPECT TO ITS CLAIMS FOR UNJUST ENRICHMENT AND QUANTUM MERUIT PLAINTIFF DOES ALLEGE THE CONFERRAL OF A BENEFIT

A. Conferral of Benefits upon Defendant

In urging dismissal of Plaintiff's claims for unjust enrichment and quantum meruit, Defendant first cites the principle that some benefit confirmed on the Defendant must be pleaded. But such a benefit indeed is pleaded. In paragraph 24 of the amended complaint, Plaintiff alleges that "the Defendant, by retaining the insurance premiums paid by the patients treated and

diagnosed by Plaintiff while refusing to reimburse Plaintiff for services rendered, was unjustly enriched by the amount of said services." The Plaintiff as assignee of the patients stands in their shoes and for purposes of the pleadings conferred the benefit. The Defendant seems to ignore this most basic aspect of the Amended Complaint in insisting, with copious citation, that conferring benefits on the patients was not doing so upon the insurer.[7]

B. Preemption

Defendants argue that insofar as a claim under ERISA is successfully pleaded, ERISA preempts any state law claim. If the Court sustains Plaintiff's cause of action under ERISA or permits amendment of the Complaint for a second time, Plaintiff will withdraw its common law claims on that basis.

**POINT IV**
**PLAINTIFF SHOULD BE ALLOWED A SECOND AMENDMENT OF THE COMPLAINT**

Should the court find valid Defendants' argument that the Amended Complaint is deficient because of the failure to plead explicitly the assignments and the nature of the insurance plan under which Plaintiff was entitled to benefits, Plaintiff respectfully request that it be allowed to amend the second time in order to cure those deficiencies. As the court is aware, rule 15(a)(2), F.R.C.P. provides that leave to amend is to be freely given in the interests of justice. The Third Circuit, moreover, has held that in the case of F.R.C.P. 12(b)(6) dismissal, the opportunity to amend must be granted, unless the court finds that the amendment would be futile or inequitable. E.g. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008); *Grayson v. Mayview State Hosp.*, 293 F.3d

---

[7] Hence, the authorities supporting this proposition on pages 17-18 of Defendant's brief are superfluous. Plaintiff does allege a benefit conferred on the insurer and not merely on the patients.

103, 114 (3d Cir. 2002). For the reasons presented above, even if the Court finds the pleading of facts in the Amended Complaint defective, it is respectfully submitted that Plaintiff should be allowed to correct those deficiencies and bring a second amended complaint under ERISA.

If leave to amend is granted in order that Plaintiff may plead with specificity the insurance plan under which it claims benefits, it is respectfully submitted that Defendant should be required to produce such plan or plans, which Plaintiff does not possess.

**Conclusion**

The Defendant's motion should be denied, or Plaintiff should be given leave to amend.

Dated: April 5, 2021

Peter Nichols, Esq.
**LEVINE DESANTIS, LLC**
530 Morris Avenue, Suite 300
Springfield, New Jersey 07081
Tel.: (973) 376-9050
Fax: (973) 376-0230
Email: pnichols@levinedesantis.com

*Attorneys for Plaintiff Open MRI and Imaging of RP Vestibular Diagnostics*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| OPEN MRI AND IMAGING OF RP VESTIBULAR DIAGNOSTICS, P.A.,<br><br>Plaintiff,<br><br>vs.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY,<br><br>Defendant. | Civil Action No.: 2:20-CV-10345-KM-ESK<br><br>*Document electronically filed*<br><br>**CERTIFICATION OF SERVICE** |

**PETER NICHOLS, ESQ.**, of age, certifies as follows:

1. I am an attorney at law of the state of New Jersey and am associated with the firm of Levine DeSantis, LLC, attorneys for plaintiff Open MRI and Imaging of  RP Vestibular Diagnostics, P. A.

2. on April 5th 2021 I caused to be filed on behalf of plaintiff via  CM/ ECF the following: (1 ) Memorandum of Law in Opposition to Motion to Dismiss and ( 2 ) Certification of Service.

3. Pursuant to L. Civ. R. 5.1 and F.R.C.P. 5, service of the foregoing pleadings was deemed made upon Gibbons, P. C., counsel for defendant, upon filing via CM/ECF.

4. A courtesy copy of plaintiff's opposition shall be served via UPS overnight on the Chambers of the Honorable Edward S. Kiel, U.S.M.J. at the Martin Luther King Building and U.S. Courthouse, 50 Walnut Street, Newark, New Jersey 07101

       I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

1

Dated: April 5, 2021

Peter Nichols, Esq.
**LEVINE DESANTIS, LLC**
530 Morris Avenue, Suite 300
Springfield, New Jersey 07081
Tel.: (973) 376-9050
Fax: (973) 376-0230
Email: pnichols@levinedesantis.com

*Attorneys for Plaintiff Open MRI and
Imaging of RP Vestibular Diagnostics*

2