**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| OPEN MRI AND IMAGING OF RP VESTIBULAR DIAGNOSTICS, P.A.,<br><br>                                         Plaintiff,<br><br>        v.<br><br>CIGNA LIFE AND HEALTH INSURANCE CO.,<br><br>                                         Defendant. | Civil Action No.  2:20-cv-10345 (KM)(ESK)<br><br>*Document electronically filed* |

**DEFENDANT CIGNA HEALTH AND LIFE INSURANCE COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

**GIBBONS P.C.**
E. Evans Wohlforth, Jr., Esq.
Arielle E. Katz Esq.
One Gateway Center
Newark, New Jersey 07102-5310
Tel: (973) 596-4500
Fax: (973) 596-0545
ewohlforth@gibbonslaw.com
akatz@gibbonslaw.com

*Attorneys for Defendant*
*Cigna Health and Life Insurance Company*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT .......................................................................... 1

PROCEDURAL HISTORY.................................................................................. 2

STATEMENT OF FACTS ................................................................................... 3

LEGAL ARGUMENT.......................................................................................... 4

I.      THE STANDARD FOR MOTION TO DISMISS ....................................... 4

II.     PLAINTIFF'S ERISA CLAIM FAILS AS A MATTER OF LAW................... 5

      A.    Plaintiff's ERISA Claim is Inadequately Pled Under *Twombly*. ........... 5

      B.    No Claim is Stated Under the FFCRA or CARES Act........................... 9

            1.    There is No Private Right of Action under the FFCRA or the CARES Act.............................................................................11

                  a.    The CARES Act................................................. 12

                  b.    The FFCRA................................................. 15

CONCLUSION.................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Sandoval*,
532 U.S. 275 (2001)................................................................................11, 12

*Apollo MD Bus. Servs., LLC v. Amerigroup Corp. (Delaware)*,
No. 1:16-CV-4814-RWS, 2017 WL 10185527 (N.D. Ga. Nov. 27, 2017) ............................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................4, 7

*Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*,
No. 17-4599-BRM-LHG, 2018 WL 5630030 (D.N.J. Oct. 31, 2018)......................................7

*Autumn Court Operating Co. LLC. v. Healthcare Ventures of Ohio*,
No. 2:20-CV-4901, 2021 WL 325887 (S.D. Ohio Feb. 1, 2021) ...........................................12

*Bakos v. Am. Airlines, Inc.*,
748 F. App'x 468 ................................................................................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................4, 5, 6, 7

*Bishop v. GNC Franchising LLC*,
248 F. App'x 298 (3d Cir. 2007) ..............................................................4

*Blassingame v. Governor of Ohio*,
2021 U.S. Dist. LEXIS 144612 (S.D.Oh. Aug. 3, 2021)......................................15

*Carter v. GardaWorld Servs.*,
2021 U.S. Dist. LEXIS 96883 (D. Md. May 20, 2021)........................................16

*In re Commonwealth's Motion to Appoint New Counsel Against or Directed to Def. Ass'n of Philadelphia*,
No. MISC.A. 13-62, 2013 WL 4501056 (E.D. Pa. Aug. 22, 2013)........................................14

*DeGrazia v. FBI*,
316 F. App'x 172 (3d Cir. 2009) ..............................................................4

*e.v. Univ. Spine. Ctr. v. Cigna Health & Life Ins. Co.*,
No. 17-13596 (KM), 2018 WL 4144684 (D.N.J. Aug. 29, 2018) (McNulty, J.) ....................6

*Haney-Fillippone v. Agora Cyber Charter Sch.*,
2021 U.S. Dist. LEXIS 88564 (E.D. Pa. May 10, 2021) .......................................15

*Hein v. F.D.I.C.*,
    88 F.3d 210 (3d Cir. 1996)......................................................................6

*Henderson v. Carranza*,
    2021 U.S. Dist. LEXIS 136963 (C.D. Ca. July 22, 2021) .......................14

*Hooven v. Exxon Mobil Corp.*,
    465 F.3d 566 (3d Cir. 2006)....................................................................6

*Johnson v. JPMorgan Chase Bank, N.A.*,
    No. 20-CV-4100 (JSR), 2020 WL 5608683 (S.D.N.Y. Sept. 21, 2020) ...................12, 13, 15

*K.S. v. Thales USA, INC.*,
    2019 WL 1895064 (D.N.J. Apr. 29, 2019) ...............................................7

*Kofler v. Sayde Steeves Cleaning Serv. Inc.*,
    No. 8:20-CV-1460-T-33AEP, 2020 WL 5016902 (M.D. Fla. Aug. 25, 2020) ......................15

*Lopez v. Beard*,
    333 F. App'x 685 (3d Cir. 2009) .............................................................4

*Malecki v. Christopher*,
    No. 4:CV-07-1829, 2008 WL 11496499 (M.D. Pa. Mar. 20, 2008) .........................14

*Matava v. CTPPS, LLC*,
    No. 3:20-CV-01709 (KAD), 2020 WL 6784263 (D. Conn. Nov. 18, 2020)..........................13

*N.R. by & through S.R. v. Raytheon Co.*,
    No. CV 20-10153-RGS, 2020 WL 3065415 (D. Mass. June 9, 2020) ...................17

*Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*,
    414 U.S. 453 (1974)................................................................................16

*Neitzke v. Williams*,
    490 U.S. 319 326-27 (1989) ...................................................................4

*Pai v. DRX Urgent Care, LLC*,
    No. 13-3558, 2014 WL 837158 (D.N.J. Mar. 4, 2014), *aff'd sub nom. Fabbro v. DRX Urgent Care, LLC*, 616 F. App'x 485 (3d Cir. 2015) ...................................4

*In re Pennsylvania*,
    No. 13-CV-1871, 2013 WL 4193960 (E.D. Pa. Aug. 15, 2013) ............................13

*Pharmaceuticals, Inc. v. Chiron Corp.*,
    27 F. App'x 94 (3d Cir. 2002) ................................................................4

*Prof'l Staff Cong./CUNY v. Rodriguez*,
    No. 20 CIV. 5060, 2020 WL 4668164 (S.D.N.Y. Aug. 12, 2020) .........................12

*Profiles, Inc. v. Bank of Am. Corp.*,
    453 F. Supp. 3d 742 (D. Md. 2020), *appeal dismissed*, No. 20-1438, 2020 WL
    6042036 (4th Cir. May 28, 2020) ......................................................................12, 15

*Robinson v. Anthem Blue Cross Life & Health Ins. Co.*,
    No. 17-4600 (FLW), 2018 WL 6258881 (D.N.J. Nov. 30, 2018) ............................7

*Shehan v. U.S. Dep't of Justice*,
    No. 1:20-CV-00500, 2020 WL 7711635 (S.D. Ohio Dec. 29, 2020) .....................13

*Smith v. United Healthcare, Inc. Co.*,
    No. 18-CV-06336-HSG, 2019 WL 3238918 (N.D. Cal. July 18, 2019) .................18

*Somerset Ortho. Assocs., P.A. v. Horizon Healthcare Servs., Inc.*,
    No. 19-8783, 2020 WL 1983693 (D.N.J. Apr. 27, 2020)........................................7

*Three Rivers Ctr. v. Hous. Auth. of the City of Pittsburgh*,
    382 F.3d 412 (3d Cir. 2004)..................................................................................11

*Transamerica Mortgage Advisors, Inc. v. Lewis*,
    444 U.S. 11 (1979)................................................................................................16

*Twp. of W. Orange v. Whitman*,
    8 F. Supp. 2d 408 (D.N.J. 1998) .............................................................................4

*US Airways, Inc. v. McCutchen*,
    569 U.S. 88 (2013)..................................................................................................6

*Wisniewski v. Rodale, Inc.*,
    510 F.3d 294 (3d Cir. 2007)...........................................................................11, 13

**Statutes**

29 U.S.C. 1132(a) ...........................................................................................................3

29 U.S.C. 1132(a)(1)(B)...........................................................................................17, 18

29 U.S.C. 1185(a) .........................................................................................................18

29 U.S.C. 1185d .............................................................................................................18

29 U.S.C. 1191b ..............................................................................................................3

29 U.S.C. § 1132(a)(1)(B) ...............................................................................................6

42 U.S.C. 247d ...............................................................................................................10

42 U.S.C. 300gg-91 .........................................................................................................3

Affordable Care Act § 2706 .................................................................................18

CARES Act, Pub. L. 116-136 ...............................................................................11

CARES Act § 3201 ................................................................................................3

CARES Act § 3202(A) ...........................................................................2, 3, 10, 13

Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116-136, 134 Stat.
    281 (2020) .......................................................................................................1

COVID-19 Compliance for Health and Welfare Plans, Practical Law Practice
    Note w-025-1497 ...........................................................................................17

ERISA Part 5 .......................................................................................................17

ERISA Part 7 .......................................................................................................17

ERISA Section 502 ................................................................................................2

ERISA § 502(a)(1)(B) .................................................................................7, 9, 18

ERISA Section 502(a)(1)(b), Section 502 ...........................................................17

ERISA Section 502(a)(3) ....................................................................................18

Families First Corona Response Act ("FFCRA"), Pub. L. 116-127, 134 Stat. 178
    (2020) ..............................................................................................................1

Family Labor Standards Act ................................................................................15

FAQs about Families First Coronavirus Response Act and Coronavirus Aid,
    Relief, and Economic Security Act Implementation Part 42, Dep't of Labor
    (April 11, 2020), *available at*
    https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-
    activities/resource-center/faqs/aca-part-42.pdf ...........................................17

FFCRA § 5105 ....................................................................................................15

Internal Revenue Code chapter 100 ....................................................................17

Internal Revenue Code § 9832 of 1986 ................................................................3

Mental Health Parity Act ....................................................................................17

Parity Act ............................................................................................................18

Pub. L. 116-127 ..................................................................................................10

Public Health Service Act title XXVII part A, part 7 of the Employee Retirement
   Income Security Act of 1974 ...........................................................................16, 17

**Rules**

Fed. R. Civ. P. 12(b)(6).................................................................................1, 4, 6

Rule 12 ...........................................................................................................7

**Regulations**

29. C.F.R. § 226.151 .........................................................................................16

29 C.F.R. § 826.150 ..........................................................................................15

Defendant Cigna Health and Life Insurance Company ("Cigna") respectfully submits this brief in support of its motion to dismiss Plaintiff Open MRI and Imaging of RP Vestibular Diagnostics, P.A.'s ("Plaintiff") Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Cigna respectfully requests that its motion be granted and that Plaintiff's claims be dismissed in their entirety.

## PRELIMINARY STATEMENT

In this action, Plaintiff asserts this Court's jurisdiction to adjudicate a claim for benefits under ERISA pursuant to employee-based medical benefit plans for diagnostic COVID-19 testing. Neither the alleged ERISA plans, nor their terms, are identified, and no theory emerges from the Second Amended Complaint why these unnamed plans require that Plaintiff receive payment. Plaintiff invokes federal statutes, the Families First Corona Response Act ("FFCRA"), Pub. L. 116-127, 134 Stat. 178 (2020), and the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. 116-136, 134 Stat. 281 (2020), which govern payment for COVID-19 testing. These statutes do not provide a private cause of action that would support this lawsuit, however. Plaintiff's invocation of ERISA in connection with these statutes does not alter that fundamental truth. The only detailed allegations appear as Explanations of Benefit forms attached as an unnamed Exhibit to the Second Amended Complaint, but these documents actually undermine rather than support the causes of action set forth.

This is the second time Cigna has briefed a motion to dismiss in this matter. The Court did not reach the merits issues presented by the earlier motion, (i) that the claims were inadequately articulated to state a claim under ERISA and (ii) that the other federal statutes cited granted no express or implied private right of action. Instead, by Order and Opinion filed June 30, 2021, the Court dismissed the First Amended Complaint for failure to allege that Plaintiff had standing to

1

bring the claims by way of assignment from its patients.  Since then, the only movement in the law has been in favor of Cigna's position below; cases since then continue to hold that there is no cause of action, express or implied, that would sustain this lawsuit under the FFCRA or the CARES Act, and the addition of ERISA into the mix does not change that result.  This more recent case law and the ample precedents on which they draw are briefed below.

## PROCEDURAL HISTORY

On August 12, 2020, Plaintiff filed a three-count Complaint alleging (1) violation of Section 6001(A) of the FFCRA, and Section 3202(A) of the CARES Act; (2) unjust enrichment; and (3) quantum meruit.  On December 11, 2020, Plaintiff filed an Amended Complaint, which couched its former claim for violation of Section 6001(A) of the FFCRA and Section 3202(A) of the CARES Act as a claim for reimbursement of benefits under Section 502 of ERISA.  The Amended Complaint maintained its claims for unjust enrichment and quantum meruit.

On June 30, 2021, this Court granted Cigna's Motion to Dismiss, dismissing all counts. (ECF No. 38).  However, the counts were dismissed without prejudice and gave Plaintiff 30 days to file a Second Amended Complaint.  A Second Amended Complaint was filed on July 27, 2021. Plaintiff renewed its claim for violation of Section 6001(A) of the FFCRA and Section 3202(A) of the CARES Act as a claim for reimbursement of benefits under Section 502 of ERISA.  Plaintiff did not renew its claims for unjust enrichment and quantum meruit.

The Second Amended Complaint is essentially identical to the First Amended Complaint, except that Plaintiff has added allegations that purport to establish that Plaintiff is proceeding as assignee of all the different ERISA plan beneficiaries alleged to have received treatment from Plaintiff.  On September 2, 2021, this Court granted Cigna's Motion to Stay Discovery, pending the resolution of this Motion.  (ECF No. 45).

## STATEMENT OF FACTS

Plaintiff alleges[1] it is a "medical office engaged in the practice, diagnosis, and treatment of Coronavirus, among other medical services that it provides," and it is located in Rochelle Park, New Jersey.  Sec. Am. Compl. ¶¶ 3, 4 (ECF No. 42).  Plaintiff further alleges that Cigna is a "health insurer and employee benefit plan" pursuant to ERISA, *id.* ¶ 6, and "issues group coverage and individual health insurance coverage" as defined in 42 U.S.C. 300gg-91, 29 U.S.C. 1191b, and Section 9832 of the Internal Revenue Code of 1986 and within the terms of Section 6001(a) of the FFCRA and Section 3202(a) of the CARES Act, *id.* ¶¶ 7-8.  Plaintiff further alleges that the Plans, "in light of the provisions of CARES Act and FFCRA, entitled the patients to be reimbursed by Defendant for the diagnostic services and treatment that they received from Plaintiff, even if the medical providers they employed were otherwise out of network." *Id.* ¶ 11.

In support of its ERISA claim, Plaintiff alleges that "[i]n arbitrarily refusing to make payment for diagnostic and treatment services rendered in connection with the Coronavirus, Defendant violated the provisions of Section 6001(a) of the FFCRA as amended by Section 3201 of the CARES Act as well as Sections 3202(a) and 3203(a) of the CARES Act[,]" and, therefore is, "liable pursuant to ERISA (29 U.S.C. 1132(a)) for said payments." *Id.* ¶¶ 23-24.  No allegation appears in the Complaint as to why the dispositions of the claims – that the services were denied as not actually provided as billed or billed incorrectly – are wrong.

---

[1] Reference in this brief to facts alleged in the Amended Complaint is not a concession of their truth.

## LEGAL ARGUMENT

### I.    THE STANDARD FOR MOTION TO DISMISS

To avoid dismissal under Rule 12(b)(6), the allegations of the complaint must "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and furnish "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading, in other words, must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Lopez v. Beard*, 333 F. App'x 685, 687 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

Courts deciding motions to dismiss thus should not accept bald assertions, untenable inferences or unsupported legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555. Moreover, "a court need not accept allegations as true that are contradicted by the documents upon which a party's claims are based." *Pai v. DRX Urgent Care, LLC*, No. 13-3558, 2014 WL 837158, at *6 (D.N.J. Mar. 4, 2014), *aff'd sub nom. Fabbro v. DRX Urgent Care, LLC*, 616 F. App'x 485 (3d Cir. 2015); *see also Pharmaceuticals, Inc. v. Chiron Corp.*, 27 F. App'x 94, 99-100 (3d Cir. 2002).

Finally, "Rule 12(b)(6) . . . 'authorizes a court to dismiss a claim on the basis of a dispositive issue of law.'" *DeGrazia v. FBI*, 316 F. App'x 172, 173 (3d Cir. 2009) (quoting *Neitzke v. Williams*, 490 U.S. 319 326-27 (1989)); *Bishop v. GNC Franchising LLC*, 248 F. App'x 298, 299 (3d Cir. 2007) (same); *Twp. of W. Orange v. Whitman*, 8 F. Supp. 2d 408, 413 (D.N.J. 1998) (same). Here, the Second Amended Complaint is insufficiently pled under *Twombly*'s basic pleading standard. However, even if alleged with more detail, Plaintiff's claim fails as a matter of law for the reasons detailed below. Accordingly, the claims against Cigna should be dismissed.

4

## II.      PLAINTIFF'S ERISA CLAIM FAILS AS A MATTER OF LAW

Quite apart from its legal problems, the Second Amended Complaint falls well short of stating a legally cognizable claim for reimbursement of benefits under ERISA.  The ERISA claim lacks basic information that a long line of authority in this area requires, such as the identity of the patients whose claims are at issue, the identity of the plans at issue, and, most critically, to identify particular provisions of the plans that were allegedly violated. Plaintiff's allusions to the FFCRA and CARES Act do not remedy these omissions.  In any event, neither of these statutes contain a private right of action under these sections, and, as set forth in detail below, ERISA may not be used as an "end-run" around the statutory limitations of the FFCRA and CARES Act.  For these reasons, Plaintiff's ERISA claim fails as a matter of law and cannot be cured by further amendment.

### A.      Plaintiff's ERISA Claim is Inadequately Pled Under *Twombly*.

The Second Amended Complaint, like the Complaint and First Amended Complaint before it, lacks the core information necessary to state a claim for benefits under ERISA.  Plaintiff does not identify the plans at issue, nor the terms of those plans Plaintiff contends Cigna violated.  It is unclear even how many claims are at issue.  In total, the Second Amended Complaint fails to provide Cigna with proper notice of alleged ERISA violations and a plausible statement of the ground on which Plaintiff seeks relief.  *See Twombly*, 550 U.S. at 555 (the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests").

The latter deficiencies – regarding the plans and plan terms – are particularly problematic.  It is well-settled in this District that a plaintiff cannot state an ERISA benefits claim without identifying the plan provision that was breached.  *See, e.v. Univ. Spine. Ctr. v. Cigna Health & Life Ins. Co.*, No. 17-13596 (KM), 2018 WL 4144684, at *3 (D.N.J. Aug. 29, 2018) (McNulty, J.)

("join[ing] recent holdings of other judges of this district" in "emphasiz[ing] that an ERISA claim requires plaintiff to allege and prove an entitlement to 'benefits due to him *under the terms of his plan*'") (emphasis in original).   ERISA's plain language unequivocally requires a plaintiff to demonstrate that he is entitled to "benefits due to him *under the terms of his plan*."   29 U.S.C. § 1132(a)(1)(B) (emphasis added); *see also US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100-01 (2013) ("ERISA's principal function" is "to protect contractually defined benefits" – that is, benefits set forth *in the plan*, - and ERISA's "statutory scheme, we have often noted, 'is built around reliance *on the face of written plan documents*.'"  (emphasis added)).   "The plan, in short, is at the center of ERISA."  *McCutchen*, 569 U.S. at 101.   And, because plan terms are "at the center of ERISA," *id.*, to state a benefits claim, a plaintiff must first "demonstrate that the benefits *are actually 'due'*" under the plan – "that is, [the ERISA plaintiff] must have a right to benefits that are legally enforceable against the plan."  *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006); *Hein v. F.D.I.C.*, 88 F.3d 210, 215 (3d Cir. 1996) ("Only the words of the Plan itself can create an entitlement to benefits.").

Courts in this District have repeatedly recognized that, without identifying plan language that was actually breached, a claim for benefits under an ERISA plan cannot withstand a Rule 12(b)(6) motion.  *See, e.g. Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-4599-BRM-LHG, 2018 WL 5630030, at *7-8 (D.N.J. Oct. 31, 2018) (dismissing ERISA claim where plaintiff alleged that Anthem "improperly refused 'to pay the usual and customary charge'" of the provider but "fail[ed] to identify any specific Plan provision entitling payment of benefit based on benefits claims for failure to allege the specific provision violated in an ERISA-governed plan."); *Robinson v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-4600 (FLW), 2018 WL 6258881, at *4 (D.N.J. Nov. 30, 2018) (no "viable claim under § 502(a)(1)(B)"

where the complaint "points to relevant provisions in the Plan but fails to allege what amount Plaintiff should be entitled to under those provisions."); *see also Somerset Ortho. Assocs., P.A. v. Horizon Healthcare Servs., Inc.*, No. 19-8783, 2020 WL 1983693, at *9 (D.N.J. Apr. 27, 2020) (dismissing where plaintiff's failed to "identify a plan term that indicates that Plaintiffs were in fact underpaid"); *K.S. v. Thales USA, INC.*, 2019 WL 1895064, at *1 (D.N.J. Apr. 29, 2019) (collecting D.N.J. cases that "granted motions to dismiss in instances where a plaintiff has failed to tie his or her allegations of ERISA violations to specific provisions of an applicable plan").

There is, of course, no reference whatsoever in the Second Amended Complaint to an ERISA plan or plans that would support Plaintiff's cause of action. There is no articulation of a plan term that, if properly applied, would lead to Plaintiff gaining the relief it seeks. The Amended Complaint relies purely on bald assumptions that Plaintiff is entitled to relief under ERISA and leaves the matter there. As the Court is well aware, conclusory assertions of liability are not entitled to a presumption of truth on a Rule 12 motion. *See Twombly*, 550 U.S. at 555 (court need not accept bald assertions, untenable inferences, or unsupported legal conclusions). The Second Amended Complaint here amounts to no more than the "defendants harmed me" statement specifically disapproved by the Supreme Court in *Iqbal*. 556 U.S. at 678.

Even the information Plaintiff does provide in the Second Amended Complaint undermines the coherence of its pleading. To detail what claims are actually at stake here, the Complaint relies on an unlabeled Exhibit to the Second Amended Complaint sent via e-mail, purporting to be a collection of "unredacted patient records supporting the additional damage claims". Further muddying the waters, the Exhibit contains records of claims totalling $1,123,979.68, while the Second Amended Complaint claims "at least $1,522,644" is due. Sec. Am. Compl. ¶ 9. However,

it is impossible to glean from this exhibit the claims at issue, or even how many claims in total there might be.

Indeed, it appears that many of the services listed in this unlabeled Exhibit relate to treatment that preceded the COVID-19 pandemic.  *See, e.g.*, Sec. Am. Compl., Ex. at 1 of 534 (referencing services provided in May and October of 2012, and July of 2013), 2 of 534 (referencing services provided in June and September of 2015), 3 of 534 (referencing services provided in November and December of 2015).  And this is just a mere sampling.  The 534 page document contains countless treatments preceding the COVID-19 Pandemic.  Moreover, it is not clear whether the amounts charged for these services, which are clearly unrelated to "diagnostic services and treatment related to Coronavirus," comprise portions of the $1,522,644 demanded in the Second Amended Complaint.

Plaintiff invokes the FFCRA and CARES Act apparently believing in their talismanic power to make Cigna "liable pursuant to ERISA" for unreimbursed medical benefits.  *See* Sec. Am. Compl. ¶ 24.  This does not fix the failure to plead a plausible claim, however.

Plaintiff does not allege that particular provisions of the FFCRA and CARES Act are incorporated or recited as explicit terms in the plans at issue.  In fact, the Second Amended Complaint is completely silent as to how an alleged violation of the FFCRA or CARES Act, if committed, is also a violation of the plans at issue.  As a result, there is no plausible basis to conclude that Cigna wrongly denied benefits in violation of ERISA § 502(a)(1)(B).  Any tacit suggestion that the FFCRA or CARES Act are incorporated by implication or as a matter of law – and no such allegation actually appears in the Second Amended Complaint – is simply wrong for the reasons set forth in Point II.B.1, *infra*.

Here, Plaintiff has failed to identify a single plan provision that Cigna allegedly violated, or explain why proper application of that provision would require a different benefit determination than what Cigna made.  The only factual detail in the Second Amended Complaint appears in the unnamed Exhibit, which actually negates any plausibility the body of the pleading might have had. Even assuming the claims set forth in the Exhibit shows charges for COVID-19 testing, and many do not, the Second Amended Complaint makes no attempt to address the grounds for the denials as stated.  If, as these documents state, the services were never actually performed or were improperly billed, then presumably the claims for reimbursement were properly denied.  Certainly, no plausible allegations of fact appears why those grounds stated were wrong.

In sum, Count I of the Second Amended Complaint is not adequately pled, and should be dismissed.

### B.     No Claim is Stated Under the FFCRA or CARES Act.

As set forth above, Plaintiff has not alleged with sufficient detail facts to support a cause of action under ERISA.  Raising the FFCRA and CARES Act adds nothing to the legal weight of the Second Amended Complaint.  Neither statute provides a private right of action under the sections alleged. A breach of the FFCRA or CARES Act is not one of the very specific causes of action enumerated in ERISA.  Plaintiff does not and cannot argue that the various, unnamed, and unidentified benefit plans at issue in this case impliedly incorporate the terms of the FFCRA or CARES Act.  We remain in the dark about what those plans might say and the settled law discussed below bars such an end-run around Congress's omission of a private right of action in the statutes themselves.  Finally, so far as the documents of record reveal, Plaintiff never actually provided the services billed or Plaintiff improperly billed for them, and Plaintiff does not provide plausible

factual allegations to the contrary.  Neither the FFCRA, the CARES Act, nor any other law requires payments to a medical provider for services it never performed or improperly submitted.

Section 6001(a) of the FFCRA provides, in relevant part, that a "group health plan and a health insurance issuer offering group or individual health insurance coverage . . . shall provide coverage, and shall not impose any cost sharing (including deductibles, copayments, and coinsurance) requirements or prior authorization or other medical management requirements," for services related to COVID-19 diagnostic testing or "items and services furnished to an individual during health care provider office visits (which term in this paragraph includes in-person visits and telehealth visits), urgent care center visits, and emergency room visits that result in an order for" administration of COVID-19 diagnostic testing, "but only to the extent such items and services relate to the furnishing or administration of such product or to the evaluation of such individual for purposes of determining the need of such individual for such product."  FFCRA, Pub. L. 116-127.

Section 3202(a) of the CARES Act provides that a "group health plan or a health insurance issuer providing coverage of items and services" described in section 6001(a) of the FFCRA shall reimburse the provider of the diagnostic testing as follows:

(1) If the health plan or issuer has a negotiated rate with such provider in effect before the public health emergency declared under section 319 of the Public Health Service Act (42 U.S.C. 247d), such negotiated rate shall apply throughout the period of such declaration.

(2) If the health plan or issuer does not have a negotiated rate with such provider, such plan or issuer shall reimburse the provider in an amount that equals the cash price for such service as listed by the provider on a public internet website, or such plan or issuer may negotiate with such provider for less than such cash price.

CARES Act, Pub. L. 116-136.[2]

### 1. There is No Private Right of Action under the FFCRA or the CARES Act

No explicit private right of action appears in the text of either the FFCRA or the CARES Act. No authority has directly addressed whether an implied right of action exists under that portion of these statutes addressing coverage or reimbursement for COVID-19 testing. Settled law on when and whether a private right of action may be implied under a federal statute, and case law addressing other portions of these sprawling statutes, make it crystal clear that no such private right of action may be implied to support Plaintiff's claims here.

As the Court is well aware, the federal courts are not quick to perceive an implied private right to bring a civil lawsuit to enforce terms of a federal statute. The correct analysis has two steps: "(1) Did Congress intend to create a personal right?; and (2) Did Congress intend to create a private remedy? Only if the answer to both of these questions is 'yes' may a court hold that an implied private right of action exists under a federal statute." *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 301 (3d Cir. 2007) (citing *Alexander v. Sandoval*, 532 U.S. 275 (2001)); *Three Rivers Ctr. v. Hous. Auth. of the City of Pittsburgh*, 382 F.3d 412, 421 (3d Cir. 2004) ("Put succinctly, for an implied right of action to exist, a statute must manifest Congress's intent to create (1) a personal right, and (2) a private remedy.").

---

[2] Plaintiff has not alleged it negotiated a rate with Cigna regarding the COVID-19 related services it provided, nor that it posted prices for such services on a publically available website. This furnishes yet another ground for dismissal of this Count, for failure to articulate the elements of a plausible cause of action under the statute, if one existed, which of course it does not.

a.      **The CARES Act**

The CARES Act addresses a wide range of areas impacted by the COVID-19 pandemic beyond payment for diagnostic testing. Since its enactment in March 2020, courts applying the *Sandoval* test have concluded that the statute does not grant a private right of action in these other contexts.  *See, e.g., Profiles, Inc. v. Bank of Am. Corp.*, 453 F. Supp. 3d 742 (D. Md. 2020) (concluding that "language of the CARES Act" did not evidence "requisite congressional intent to create a private right of action" to apply for paycheck protection program ("PPP") loan from lender of one's choosing, nor a private remedy against participating lenders), *appeal dismissed*, No. 20-1438, 2020 WL 6042036 (4th Cir. May 28, 2020); *Johnson v. JPMorgan Chase Bank, N.A.*, No. 20-CV-4100 (JSR), 2020 WL 5608683, at *8 (S.D.N.Y. Sept. 21, 2020) (finding that the CARES Act does not contain an express cause of action to enforce PPP and that there is "no language in the CARES Act" suggesting that Congress intended for plaintiffs to have a private remedy); *Prof'l Staff Cong./CUNY v. Rodriguez*, No. 20 CIV. 5060, 2020 WL 4668164 (S.D.N.Y. Aug. 12, 2020) (finding Congress did not intend to create private remedy for enforcement of section of CARES Act providing that institution which received funding under Act was required to continue to pay its employees and contractors during period of any disruptions or closures related to coronavirus).

Earlier this year, the Southern District of Ohio addressed the issue head on.  "This Court concludes that the CARES Act creates no implied private right of action. The text of the CARES Act indicates no intent on the part of Congress to create such a private right of action; it included no clear and unambiguous rights-creating language.  Absent congressional intent to create a private remedy, this Court may not imply one."  *Autumn Court Operating Co. LLC. v. Healthcare Ventures of Ohio*, No. 2:20-CV-4901, 2021 WL 325887, at *6 (S.D. Ohio Feb. 1, 2021); *see also Matava v. CTPPS, LLC,* No. 3:20-CV-01709 (KAD), 2020 WL 6784263, at *1 (D. Conn. Nov. 18, 2020) (noting that, for purposes of establishing federal question jurisdiction, CARES Act does

12

not expressly provide a private right of action and concluding that the Complaint does not set forth "sufficient (or any) analysis as to why . . . the Court should find an implied right of action"); *Shehan v. U.S. Dep't of Justice*, No. 1:20-CV-00500, 2020 WL 7711635, at *11 (S.D. Ohio Dec. 29, 2020) (concluding that there is no express or implied right of action created by CARES Act sufficient to establish federal question jurisdiction).

The courts require that any congressional intent to create a private right and a private remedy to enforce must be expressed through a "clear manifestation," and only exists "where the statute's text and structure show an intention to create a federal right through rights-creating language, an intention to create a private remedy, and consistency of a private remedy with the statutory scheme." *Johnson*, 2020 WL 5608683, at *8. Section 3202(a) of the CARES Act merely provides that a health insurer must reimburse a provider at (1) a previously-agreed upon rate; or (2) if there is no negotiated rate, at a rate equivalent to the cash price for such service listed on a public website or at a lower rate, negotiated between the health insurer and the provider. It neither states nor implies anything about private rights or remedies.

A key factor in divining congressional intent regarding private remedies for statutory violations is whether Congress delegated enforcement to a public regulator rather than to a private litigation. Where Congress has specifically provided for agency enforcement, there is "a strong presumption against implied private rights of action that must be overcome." *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 305 (3d Cir. 2007); *In re Pennsylvania*, No. 13-CV-1871, 2013 WL 4193960, at *13 (E.D. Pa. Aug. 15, 2013) ("[W]hen a statute explicitly delegates authority to a federal agency to enforce its law, there is a 'strong presumption against implied private rights of action.'" (internal citation omitted)); *Malecki v. Christopher*, No. 4:CV-07-1829, 2008 WL 11496499, at *9 (M.D. Pa. Mar. 20, 2008) ("The sole reference to enforcement of [statutory

provision] by the United States Attorney General, along with the absence of other enforcement provisions, creates a presumption that Attorney General's enforcement of this statute is exclusive."); *In re Commonwealth's Motion to Appoint New Counsel Against or Directed to Def. Ass'n of Philadelphia*, No. MISC.A. 13-62, 2013 WL 4501056, at *7 (E.D. Pa. Aug. 22, 2013) ("Where, as here, a statute provides for 'agency enforcement' (that is, delegation to a federal agency to enforce the law), it 'creates a strong presumption against implied private rights of action.'"); *cf. Bakos v. Am. Airlines, Inc.*, 748 F. App'x 468, 474 (finding private right of action existed where amendment did not task agency with enforcement.)

In the CARES Act, Congress did not leave enforcement of its terms to private litigants.  On the contrary, Section 3202(b)(2) expressly bestows upon the Secretary of Health and Human Services (the "Secretary") the exclusive right to:

> impose a civil monetary penalty on any provider of a diagnostic test for COVID-19 that is not in compliance with paragraph (1) and has not completed a corrective action plan to comply with the requirements of such paragraph, in an amount not to exceed $300 per day that the violation is ongoing.

The foregoing defeats any remaining notion that there is a private right of action under the CARES Acts to recover the cost of COVID-19 testing. Congress decided that the Secretary, not private litigants, was the proper enforcer of the CARES Act.

The judicial tide has continued to strongly in the same direction and against finding an implied right of action since this Court dismissed the First Amended Complaint on June 30, 2021, the courts uniformly rejecting the notion.  In July, the Central District of California held, "[T]he CARES Act does not create a private right of action . . . ." *Henderson v. Carranza*, 2021 U.S. Dist. LEXIS 136963 (C.D. Ca. July 22, 2021) . . .").  The Southern District of Ohio joined this growing line of authority in August.  *See Blassingame v. Governor of Ohio*, 2021 U.S. Dist. LEXIS 144612, at *6 (S.D.Oh. Aug. 3, 2021) (dismissing plaintiff's complaint because there "is no private right

to action under the CARES Act").  The line of authority directly contradicting the premise of Plaintiff's Second Amended Complaint is only longer than when it filed the First Amended Complaint.

Congress did not expressly grant a private right of action to enforce these statutes. Enforcement authority was, instead, delegated to official regulators.  Recognizing a private right of action on the facts of this case would irretrievably be at odds with the overall statutory scheme. *See Johnson*, 2020 WL 5608683, at *8.  There is no basis for a suggestion that Congress intended to create a private right of action for medical providers (like Plaintiff here), to seek reimbursement from health insurers, nor a private remedy in Plaintiff's favor under the CARES Act.  *See Profiles, Inc.*, 453 F. Supp. 3d at 751-52.

### b.    The FFCRA

As set forth *supra*, Section 6001(a) of the FFCRA requires health insurers to provide coverage for COVID-19 diagnostic testing and related treatment.  Like the CARES Act, the FFCRA does not expressly create a private right of action for medical providers to seek reimbursement for allegedly unpaid medical benefits arising from COVID-19 testing.  No court has examined whether the FFCRA gives rise to an implied private right of action for COVID-19 testing either.  The statute does, however, ***expressly*** grant a private right of action against improperly denied leave under the Family Labor Standards Act.  FFCRA § 5105; 29 C.F.R. § 826.150; *Kofler v. Sayde Steeves Cleaning Serv. Inc.*, No. 8:20-CV-1460-T-33AEP, 2020 WL 5016902, at *2 (M.D. Fla. Aug. 25, 2020); *see also Haney-Fillippone v. Agora Cyber Charter Sch.*, 2021 U.S. Dist. LEXIS 88564 (E.D. Pa. May 10, 2021) ("Plaintiff has a private right of action against [the Defendant] under [Division C (the Emergency Family and Medical Leave Expansion Act) and Division E (the Emergency Paid Sick Leave Act)] of the FFCRA"); *Carter v.*

*GardaWorld Servs.*, 2021 U.S. Dist. LEXIS 96883 (D. Md. May 20, 2021) ("The FFCRA provides a private cause of action for qualifying employees who seek to challenge their employers 'interference with the exercise of rights, discrimination, and interference with proceedings or inquires described in the FMLA" (citing 29. C.F.R. § 226.151)).

This weighs strongly against finding an implied private right of action with respect to diagnostic testing for COVID-19.  Where Congress explicitly granted a private right of action elsewhere in the statute, the only fair inference to be drawn from the absence of an express right of action with respect to COVID-19 testing is that Congress was aware of the implications of granting such a right and intentionally withheld it.  *See Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 461 (1974) (in refusing to recognize a private right of action under the Rail Passenger Service Act of 1970, the Supreme Court invoked the restrictive maximum of statutory construction, *expressio unius est exlusio alterius*, and interpreted a section of the Act providing for administrative remedy as an indication Congress intended to preclude all other remedies); *see also Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 21 (1979) (invoking *expressio unius* doctrine to deny implied private action under section 206 of the Investment Advisors Act of 1940, and noting that "when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly." (internal citations omitted)).

Further parallel to the CARES Act, here too Congress delegated enforcement of the FFCRA to the Secretary.  The Secretary is empowered to enforce the provisions of subsection 6001(a), "as if included in the provisions of part A of title XXVII of the Public Health Service Act, part 7 of the Employee Retirement Income Security Act of 1974) ("ERISA Part 7"), and subchapter B of chapter 100 of the Internal Revenue Code of 1986, as applicable." FFCRA § 6001(b).  CARES Act Section 3202(a) amends Section 6001(a) of the FFCRA, to provide that the Secretary possesses

16

authority under Section 3202(b) to enforce any failure by a health insurer to provide coverage for COVID-19 diagnostic testing and related treatment as set forth in Section 6001(a). *See* FAQs about Families First Coronavirus Response Act and Coronavirus Aid, Relief, and Economic Security Act Implementation Part 42, Dep't of Labor (April 11, 2020), *available at* https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/faqs/aca-part-42.pdf.

The fact that FFCRA borrows from ERISA Part 7 and provides that the Secretary shall enforce its terms "as if included in" Part 7 does not incorporate the FFCRA into ERISA, nor does it graft onto the FFCRA ERISA's carefully delineated cause of action for plan benefits under ERISA Section 502(a)(1)(b).[3] The FFCRA is not the only statute to borrow from ERISA Part 7's enforcement regime. The Mental Health Parity Act and the Affordable Care Act are examples. The courts have been clear that these other statutes do not magically gain a private cause of action under ERISA via reference to ERISA Part 7 – even where those other statutes are explicitly incorporated into ERISA Part 7 – which, of course, the FFCRA is not.[4] *See N.R. by & through S.R. v. Raytheon Co.*, No. CV 20-10153-RGS, 2020 WL 3065415, at *7 (D. Mass. June 9, 2020) (holding that the Mental Health Parity Act ("Parity Act") is not impliedly incorporated into terms of ERISA plan, and therefore, plaintiff could not bring claim under ERISA Section 502(a)(1)(B) on alleged violation of same, despite requirement for coverage under Parity Act set forth in 29 U.S.C. 1185(a)).

---

[3] Section 502 is within Part 5 of the ERISA statute.

[4] The FFCRA does not technically amend ERISA. *See* COVID-19 Compliance for Health and Welfare Plans, Practical Law Practice Note w-025-1497. Reference to ERISA Part 7 in FFCRA does not, therefore, mean that the FFCRA is part of ERISA.

The courts have explicitly based these decisions on the danger of frustrating Congress's intentional omission of a private right of action by permitting an end-run around it through ERISA. *Smith v. United Healthcare, Inc. Co.*, No. 18-CV-06336-HSG, 2019 WL 3238918, at *7 (N.D. Cal. July 18, 2019) (rejecting plaintiff's argument that she has a private right of action under Section 2706 of the Affordable Care Act ("ACA") through ERISA Section 29 U.S.C. 1132(a)(1)(B) because ACA is "incorporated" into ERISA under 29 U.S.C. 1185d as an "attempted end-run" around ACA's statutory limitation); *Apollo MD Bus. Servs., LLC v. Amerigroup Corp. (Delaware)*, No. 1:16-CV-4814-RWS, 2017 WL 10185527, at *11 (N.D. Ga. Nov. 27, 2017) (rejecting claim under ACA because it does not provide private right of action and plaintiff does not have standing to bring claim under Section 502(a)(3) of ERISA).

It may be that Plaintiff is attempting the same type of end-run rejected in the *Smith* decision quoted *supra*. 2019 WL 3238918, at *7.  The Second Amended Complaint is silent as to that, simply citing the statue and leaving the analysis to Cigna and the Court.  There is no justification, however, for Plaintiff to attempt such a "end-run" around the statutory limitations of the FFCRA or the CARES Act.  Until such time that Congress explicitly determines parties such as Plaintiff should have a private right of action for violations of either the FFCRA or CARES Act through ERISA (or otherwise), this Court should decline to infer such a right.  For the reasons set forth above, Plaintiff's ERISA claim, based solely on alleged violations of the FFCRA and CARES Act, fails as a matter of law and must be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Cigna respectfully requests that Plaintiff's Second Amended Complaint be dismissed, with prejudice, in its entirety.

Respectfully submitted,

Dated: September 23, 2021          s/ E. Evans Wohlforth, Jr.
      Newark, New Jersey          E. Evans Wohlforth, Jr., Esq.
                                       Arielle E. Katz, Esq.
                                       **GIBBONS P.C.**
                                       One Gateway Center
                                       Newark, NJ  07102-5310
                                       Tel: (973) 596-4500
                                       Fax: (973) 596-0545
                                       ewohlforth@gibbonslaw.com
                                       akatz@gibbonslaw.com

                                       *Attorneys for Defendant Cigna Health and*
                                       *Life Insurance Company*