**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **OPEN MRI AND IMAGING OF RP VESTIBULAR DIAGNOSTICS, P.A.,** <br><br> Plaintiff, <br><br> v. <br><br> **CIGNA HEALTH AND LIFE INSURANCE COMPANY,** <br><br> Defendant. | Civ. No. 20-10345 (KM) (ESK) <br><br> **OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

      Open MRI and Imaging of RP Vestibular Diagnostics, P.A. ("Open MRI") is a medical practice that served patients insured by Cigna Health and Life Insurance Company ("Cigna"). Open MRI claims that it submitted invoices to Cigna for COVID-19 tests administered to Cigna-insured patients, but Cigna declined to pay. Open MRI brings this action on behalf of those patients for violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

      Now before the Court is Cigna's motion (DE 51) to dismiss Open MRI's Second Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).[1] For the reasons stated herein, I will **DENY** the motion.

---

[1]     Certain citations to record are abbreviated as follows:

    "DE" = Docket entry number in this case

    "Am. Compl." = Open MRI's Amended Complaint (DE 13)

    "2AC" = Open MRI's Second Amended Complaint (DE 42)

    "Mot." = Cigna's Brief in Support of its Motion to Dismiss (DE 51)

    "Opp." = Open MRI's Opposition to Cigna's Motion to Dismiss (DE 63)

I. **SUMMARY**

**A. Factual Allegations**

Open MRI is a New Jersey medical practice that provided COVID-19 testing to Cigna-insured patients, among other medical services. (2AC at ¶¶ 4, 9.) Cigna insures and administers health plans that are governed by ERISA. (2AC at ¶6.)

The 2AC alleges that Open MRI submitted invoices to Cigna for these COVID-19 tests, totaling at least $1,522,644. (2AC at ¶ 9.) Open MRI contends that the Cigna-insured patients receiving these tests did so pursuant to their medical insurance plans (the "Plans"), which are "issued and maintained by [Cigna]." (2AC at ¶10.)

However, Cigna declined to pay Open MRI for these services because the services were purportedly (1) not rendered as billed, (2) did not match the services billed, or (3) because the billing was duplicative. (2AC at ¶¶ 14-16.) Open MRI claims that these grounds are invalid and attempted to resolve the dispute with Cigna to no avail. (2AC at ¶¶ 17-19.)

The 2AC states that the Cigna-insured patients who received COVID-19 tests "assigned their rights and benefits under the Plans" to Open MRI. (2AC at ¶12.) Accordingly, on behalf of those patients, Open MRI brings this ERISA claim against Cigna. (¶¶ 2AC 22-25.) Cigna moves to dismiss (Mot.)

**B. Procedural Background**

Open MRI filed the initial Complaint (DE 1) on August 12, 2020, and the Amended Complaint (DE 13) on December 11, 2020. On June 30, 2021, the Court granted Cigna's motion to dismiss in its entirety pursuant to Fed. R. Civ. P. 12(b)(6). (DE 37; DE 38.)

The currently operative 2AC submits a revised claim under ERISA for the improper denial of benefits. (2AC at ¶¶ 22-24; *see also* 29 U.S.C. § 1132(a)(1)(B).) On September 23, 2021, Cigna filed the motion to dismiss before the Court, arguing that the 2AC, like the Amended Complaint, fails to state a claim and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). (DE 51.)

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief.") (citation omitted). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' … it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Defendant, as the moving party, bear the burden of showing that no claim has been stated. *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

## III.   DISCUSSION

### A. ERISA Claim

ERISA "provide[s] a uniform regulatory regime over employee benefit plans," including health insurance plans. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). Section 502(a)(1)(B) of ERISA provides that "[a] civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

#### 1. Assignment of Benefits

By the statute's terms, only a "participant or beneficiary" may bring a claim. *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004). Nonetheless, a healthcare provider may bring claims if it has a valid assignment of benefits from a plan participant. *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014). The issue becomes whether the patient, who possesses the right to seek reimbursement from the insurer, has validly authorized the provider to exercise that right on the patient's behalf. *See MedWell, LLC v. Cigna Corp.*, Civ. No. 20-10627, 2020 WL 7090745, at *3 (D.N.J. Dec. 4, 2020); *Progressive Spine & Orthopaedics, LLC v. Empire Blue Cross Blue Shield*, Civ. No. 16-01649, 2017 WL 751851 at *5 (D.N.J. Feb. 27, 2017).

In dismissing the Amended Complaint, the Court found that Open MRI failed to allege the existence of such an assignment. (DE 37 at 3.) Open MRI asked the Court to *infer* such an allegation from Cigna's explanation of benefit forms, which did not cite "the lack of an assignment" as a ground for the denial of the various claims. (DE 37 at 3.) The Court rejected Open MRI's invitation, explaining that because "the assignment is the very basis of [Open MRI's] entitlement to sue, [it] may reasonably be asked to at least allege its existence." (DE 37 at 3 (citing *MedWell, LLC v. Cigna Corp.*, Civ. No. 20-10627, 2020 WL 7090745, at *3 (D.N.J. Dec. 4, 2020)).)

The 2AC addresses the deficiencies identified in my previous opinion. Specifically, the complaint now (1) alleges that the Cigna-insured patients assigned "their rights and benefits under the Plan" to Open MRI and (2) includes the language from the "Assignment of Benefits form" that each patient allegedly executed.[2] (2AC at ¶ 12; *see also Premier Health Ctr., P.C. v. UnitedHealth Grp.*, No. CIV.A. 11-425 ES, 2012 WL 1135608, at *7 (D.N.J. Apr. 4, 2012) (finding "that the standard form language provided by [p]laintiffs is sufficient to establish derivative standing by assignment to bring their ERISA claims.") Cigna does not appear to dispute that an assignment has now been alleged. (Mot. at 2 ("The [2AC] is essentially identical to the … Amended Complaint, except that [Open MRI] has added allegations that purport to establish that [it] is proceeding as assignee of all the different ERISA plan beneficiaries alleged to have received treatment from [Open MRI].") Accordingly, the Court finds that Open MRI has established standing to sue under ERISA.

### 2. Term of the Plan

Having adequately alleged that it can sue in the patients' stead, Open MRI must also allege a cause of action. In particular, it must allege factually "that the benefits are actually 'due'" under those patients' Cigna plans— "that is, [the ERISA plaintiff] must have a right to benefits that is legally enforceable against the plan." *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006); *see also Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012). Ordinarily, this means that Open MRI must identify a term of the plan which Cigna allegedly breached. *Univ. Spine Ctr. v. Cigna Health & Life Ins. Co.*, Civ. No. 17-13596, 2018 WL 4144684, at *3 (D.N.J. Aug. 29, 2018).[3]

---

[2]   Naturally raising the question of why, if plaintiff possessed these assignments, it put the Court to the burden of analyzing its convoluted theory instead of just amending the complaint.

[3]   Indeed, in moving to dismiss, Cigna argues that the 2AC's ERISA claim is inadequately pled because Open MRI fails to "identify the plans at issue, nor the terms of those plans" allegedly violated by Cigna. Mot. at 5-6 (citing cases in this District that hold that a plaintiff "cannot state an ERISA benefits claim without identifying the plan provision that was breached").

5

The 2AC's allegations, however, do not follow that usual pattern of pointing to a breach of a specific provision written into the plan. Open MRI has a different theory: Federal law requires health insurers to cover COVID-19 testing, and this legal obligation is incorporated as a "term of the plan," enforceable by an ERISA plaintiff. (Opp. at 14-15.) In short, Open MRI alleges that the obligation to cover COVID-19 testing is not an express but an implied term of the plan, imposed as a matter of federal law. Specifically, Open MRI points to the Families First Act, Pub. L. No. 116-127, § 6001, 134 Stat. 178, 201 (2020) (codified at 42 U.S.C. § 1320b-5 note (Coverage of Testing for COVID-19)), and the CARES Act, Pub. L. No. 116-136, § 3202, 134 Stat. 281, 367 (2020) (codified at 42 U.S.C. § 256b note (Pricing of Diagnostic Testing)). (I will sometimes refer to these two together as the "Acts.")

The Families First Act provides that "[a] group health plan and a health insurance issuer offering group or individual health insurance coverage … shall provide coverage … for … diagnostic products … for the detection of SARS-CoV-2." Families First Act § 6001(a)(1). "The terms 'group health plan'; 'health insurance issuer'; 'group health insurance coverage', and 'individual health insurance coverage' have the meanings given such terms in [ERISA]." *Id.* § 6001(d). Another subsection, titled "Enforcement," states that the requirement "shall be applied by the Secretary of Health and Human Services,

---

Cigna also asserts that Open MRI failed to allege "that particular provisions of the [Families First Act] and CARES Act are incorporated or recited as explicit terms in the plans at issue." Mot. at 8. However, for the reasons described below, *infra*, the Court finds that Cigna's reimbursement obligation for COVID-19 testing derives from the Family First Act and CARES Act, which effectively modifies the terms of the Plans. It follows that the Plans, irrespective of the particular details of their language, *could not* be interpreted to preclude Cigna's obligation to reimburse providers pursuant to federal law. Accordingly, Open MRI's failure to either (1) plead the specific plan language or (2) explicitly allege that the Families First Act and CARES Act "are incorporated or recited as explicit terms" in the Plans does not necessitate dismissal of the claim. *See Murphy Med. Assocs., LLC v. Cigna Health & Life Ins. Co.*, No. 3:20CV1675(JBA), 2022 WL 743088, at *8 (D. Conn. Mar. 11, 2022).

6

Secretary of Labor, and Secretary of the Treasury to group health plans and health insurance issuers . . . as if included in the provisions of . . . part 7 of [ERISA]." *Id.* § 6001(b). Part 7 of ERISA "identif[ies] requirements for group health plans." *Andre-Pearson v. Grand Valley Health Plan, Inc.*, 963 F. Supp. 2d 766, 773–74 (W.D. Mich. 2013); *see also* 18 U.S.C. §§ 1181–83, 1185. The CARES Act, passed a week after the Families First Act, provides that plans and insurers "shall reimburse the provider of the diagnostic testing." CARES Act § 3202(a).

Whether those Acts authorize a plaintiff to bring a suit for damages under ERISA when an insurer denies payment for COVID-19 testing, however, is a distinct question, and one of first impression in this District. I start with the text of the Acts and ERISA, and, since this question involves multiple statutes, I strive to harmonize them. *Intel Corp. Invest. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 776 (2020); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018).

The statutory text that creates the coverage requirement, the Families First Act, says that "group health plans" "shall provide coverage" for COVID-19 testing, § 6001(a), and that "group health plan" has the same meaning as in ERISA. By defining "group health plan" via cross-reference to ERISA, the Families First Act suggests, at the very least, that its requirement of COVID-19 testing coverage is intended to interlock with ERISA. *See Van Buren v. United States*, 141 S. Ct. 1648, 1657 (2021) (courts must follow a statute's explicit definition of a term); *United States v. Davis*, 139 S. Ct. 2319, 2331 (2019) ("Usually when statutory language is obviously transplanted from other legislation, we have reason to think it brings the old soil with it.") (cleaned up); *In re Trump Ent. Resorts*, 810 F.3d 161, 167 (3d Cir. 2016) (courts "assume that Congress passed each subsequent law with full knowledge of the existing legal landscape"). Put differently, while the Families First Act did not in so many words amend ERISA, its cross-reference and incorporation of definitions suggest that it is intended to work in tandem with ERISA. I take that to be an

7

enacted expression of Congress's intent, apart from any arguments of legislative history.

That argument, in my view, can and should be pushed an extra step. By using the term "group health plan," Congress clearly conveyed that it was imposing obligations *on the plans*, not just on regulated entities in some more general sense. The importance of using the term "group health plan," an ERISA term of art, can hardly be overstated. The "plan" is the linchpin of ERISA and of the ERISA cause of action which allows the insured "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B); *see also US Airways, Inc. v. McCutchen*, 569 U.S. 88, 101 (2013) ("The plan, in short, is at the center of ERISA."). This congruity and cross-reference suggest that Congress intended the testing coverage requirement to be part and parcel of ERISA-regulated plans. Indeed, reading the statutes in this way comports with the general principle of insurance law that applicable laws and mandated coverage are deemed to be incorporated as terms of an insurance plan. *Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 861 (7th Cir. 1997) (collecting cases); 10A *Couch on Insurance* § 144:27 (3d ed. Dec. 2021 update); *see UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 376–77 & n.7 (1999) (recognizing that a plaintiff could sue under "§ 502(a)(1)(B) for benefits due" and use state insurance law "as a relevant rule of decision"); *United States v. Texas*, 507 U.S. 529, 535 (1993) ("[C]ourts may take it as a given that Congress has legislated with an expectation that the common law principle will apply except when a statutory purpose to the contrary is evident.")(cleaned up).

Bolstering these considerations is the subsection of the Families First Act which instructs the agency Secretaries to apply this COVID testing mandate *in pari materia* with other mandated forms of coverage under ERISA Part 7. Families First Act § 6001(b). The Act thus instructs at least the implementing agencies (if not the insurers directly) to treat the COVID-19 testing coverage requirement as an ERISA requirement.

Cutting against this interpretation, says Cigna, is the general principle of fidelity to a plan's written terms: The U.S. Supreme Court has "recognized the particular importance of enforcing plan terms as written in § 502(a)(1)(B) claims." *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013). And it is true, of course, that a court generally cannot look outside the plan's own text when determining what benefits are due under "the terms of the plan." *CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011). Statutory requirements, however, are not treated as extrinsic evidence; courts must apply the terms of the plan "insofar as they accord with the statute." *McCutchen*, 569 U.S. at 101 (citing 29 U.S.C. § 1104(a)(1)(D)); *see also Bauer v. Summit Bancorp*, 325 F.3d 155, 160 (3d Cir. 2003) ("We are required to enforce the Plan as written unless we find a provision of ERISA that contains a contrary directive.") (cleaned up).

The Acts, Cigna points out, do not explicitly amend ERISA. The Families First Act, for example, only instructs the Secretaries to apply the requirement "as if" it were in Part 7 of ERISA; it does not take the additional step of actually amending Part 7 itself. (Mot. at 15–16.)

That is true as far as it goes. The Acts do not explicitly announce themselves to be amendments to the ERISA statute. Nevertheless, I think that Congress's intent to tie these requirements to ERISA need not be divined but is expressed clearly enough in the statutory language. This is not, for example, a mere borrowing of a statutory definition for convenience. Congress explicitly required ERISA-regulated plans—*expressly defined as such*—to provide this COVID-related coverage. The Families First Act, by imposing this COVID testing coverage requirement on plans as defined by ERISA, made it an ERISA requirement.[4]

---

[4] The parties dispute the relevance of a comparison to another component of Part 7 which requires that plans treat mental health benefits the same as medical benefits. The Secretary of Labor has taken the position in litigation that a plaintiff alleging a violation of that provision can bring a § 502(a)(1)(B) claim because the provision is deemed part of the plan, irrespective of what the plan may say. Brief of the Secretary

Regardless, and more generally, the requirement is one imposed by federal law, so it is incorporated into plans. *Plumb*, 124 F.3d at 861. In other words, an express amendment of ERISA is not absolutely necessary. Rather, courts have held that a legal requirement from any source can become a "term of the plan" if such an intent is expressed clearly. *See id.* (collecting cases where Courts of Appeals held that state-law coverage requirements were incorporated as terms of an ERISA plan). So Cigna's quibbling with how and whether the Acts can be said to be part of the ERISA statute is not entirely to the point. What matters is that these Acts impose legal requirements on ERISA plans.

---

of Labor as Amicus Curiae at 11–12, *N.R. v. Raytheon Co.*, No. 20-1639 (1st Cir. Oct. 7, 2020). The Secretary's views, which would by analogy support the result I reach here, are entitled to the most respectful consideration. *See Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Relations*, 730 F.3d 1024, 1037 (9th Cir. 2013) (explaining when an agency's views expressed in litigation deserve consideration); *Conn. Off. of Protect. & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ.*, 464 F.3d 229, 239–40 (2d Cir. 2006) (Sotomayor, J.) (same).

Nevertheless, I do not give them weight, for two reasons. First, courts have split on this issue in relation to the mental-health-benefits mandate. *Compare Christine S. v. Blue Cross Blue Shield of N.M.*, 428 F. Supp. 3d 1209, 1229 (D. Utah 2019) (rejecting a § 502(a)(1)(B) claim) *with N.R. by & through S.R. v. Raytheon Co.*, 24 F.4th 740, 752 (1st Cir. 2022) (allowing a § 502(a)(1)(B) claim) *and K.H.B. by & through Kristopher D.B. v. UnitedHealthcare Ins. Co.*, No. 18-cv-795, 2019 WL 4736801, at *4–5 (D. Utah Sept. 27, 2019) (allowing a § 502(a)(1)(B) claim).

Second, the differences between the mental-health-benefits mandate and the one at issue here make for a weak comparison. On the one hand, the latter is not a requirement to cover a specific benefit, but to treat certain benefits equally. Thus, the mandate here fits more squarely into those that have been deemed to become terms of the plan. *See* 10A *Couch on Insurance* § 144:27 ("Mandatory coverage provisions … will be read into any appropriate policy…."). On the other hand, the mental-health-benefits mandate was expressly included in Part 7, putting it more firmly in ERISA. Yet, that difference can still be explained when one considers the legislative drafting pressures Congress faced with the Acts. That is, Congress was working to address a crisis, so it may have intended to write a provision that would apply across many statutory regimes and did not have the luxury of reorganizing each subchapter of the Code which this provision affected.

It is thus no great leap to find that, for an ERISA plan to accord with the statute, the COVID coverage requirement must be deemed a part of the plan.

Cigna makes a second, distinct argument that, by giving enforcement authority to the Secretaries, Congress intended to displace any private right of action to enforce the COVID-19 testing coverage mandate. (Mot. at 14-15, 16-17.) It is true that often, "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001). But this is not a case, like *Sandoval*, in which we are writing on a clean slate or construing one statute as a closed system. Rather, these statutes by their explicit terms require that I construe them together. ERISA already provides an express private cause of action to recover benefits under a plan, as Congress was surely aware when it passed the Families First and CARES Acts. Those two Acts mandate coverage of COVID-19 testing as a benefit under an ERISA plan. ERISA itself is a dual-enforcement statute. *See* 29 U.S.C. § 1132(a). The Acts' supplementation of the implementing agencies' authority does not undermine plan participants' already existing parallel ability to bring a private lawsuit.[5]

That brings me to the bottom line in this case: Congress mandated that health insurance plans cover COVID-19 testing, raising it to the status of a benefit of those plans. Congress also allows insureds to sue for benefits due to them. It therefore stands to reason that an insured can sue under ERISA when an insurer denies coverage for COVID-19 testing.[6] That is the best, most

---

[5] At any rate, the view that only the Secretaries can enforce this mandate does not accord with the statutory scheme. On one view, the Secretaries are authorized to add their voice to the COVID-19 testing coverage mandate—but that is already directly required by statute, and the issue concerns cases in which coverage is wrongfully denied in individual cases. Another possible view—that many thousands or millions of claims for COVID-19 testing must potentially be litigated by the Secretaries—is anomalous, and would perhaps require the erection of a huge administrative claims apparatus, for which there is no hint of authorization in the statute.

[6] Two out-of-circuit decisions have come to the same conclusion, although the courts in these cases also addressed the question of whether there is an implied private right of action under the Families First Act and CARES Act (as opposed to a

harmonious reading of these explicitly interrelated statutes. Accordingly, Open MRI, on behalf of patient assignors, has stated an ERISA claim.

Accordingly, the Court denies Cigna's motion to dismiss Count 1 of the 2AC.

---

right to sue for a benefit under ERISA). In the first case, *Murphy Med. Assocs., LLC v. Cigna Health & Life Ins. Co.*, the court did not find an implied private right of action under the Acts but allowed the provider to pursue a § 502 (a)(1)(B) claim under ERISA. 2022 WL 743088, at *5, *8. Judge Janet Bond Arterton reasoned that the plaintiff failed to identify "anything in the text or [the] structure of the CARES Act" evincing Congress's intent to afford plaintiffs "with a private enforceable remedy" *under those statutes.* 2022 WL 743088, at *5.

Nevertheless, Judge Arterton held that the provider could pursue a § 502 (a)(1)(B) ERISA claim, because Cigna's "reimbursement obligation derives from the Coronavirus Legislation, which effectively modified the terms of ERISA plans to provide [COVID-19] tests at no cost to a patient." *Id.* at *8. Thus, the court rejected Cigna's argument that the plaintiff's "failure to plead the specific plan language or identify the individual assignor-beneficiaries" warranted dismissal of the claim. *Id.*

The second case, *Diagnostic Affiliates of Ne. Hou, LLC v. United Healthcare Servs., Inc.*, Judge Nelva Gonzales Ramos found that the provider could assert claims for COVID-19 testing reimbursement under the Acts and § 502 (a)(1)(B). No. 2:21-CV-00131, 2022 WL 214101, at *7-*9, *10-*11(S.D. Tex. Jan. 18, 2022). According to Judge Ramos, "the mandatory nature of the reimbursement right" supported recognizing an implied private right of action under the Acts. *Id.* at *7. Moreover, the court explained that the "administrative enforcement provisions … [fell] short of providing any avenue for a COVID-19 testing provider" to be reimbursed because the Secretary is only empowered to impose a civil fine on providers that fail to publish the cash price for a COVID-19 test." *Id.* at *8 (emphasis added) (citing CARES Act § 32023(a)). As to the ERISA claim, the court found that the provider sufficiently alleged that (1) it had standing and (2) the claims review process should be deemed exhausted or futile; accordingly, the Court allowed the provider's § 502 (a)(1)(B) claim to proceed. *Id.* at *9-11.

These decisions are of course nonbinding on this Court. Nonetheless, these decisions suggest (whether explicitly or implicitly) that by Congress making COVID-19 testing reimbursement an ERISA requirement, plaintiffs can sue under ERISA for such benefit.

## IV. CONCLUSION

For the reasons set forth above, I will **DENY** Cigna's motion (DE 51) to dismiss the 2AC. A separate order will issue.

Dated: May 18, 2022

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty
United States District Judge**

13